THERESA BRODDE, Plaintiff-Appellee, v. LOLETA DIDRICKSON, Director, Department of Employment Security, *et al.*, Defendants-Appellants (Borden Company, Defendant).

First District (6th Division)   No. 1—93—4576

Opinion filed January 13, 1995.

Roland W. Burris, Attorney General, of Chicago (Robert G. Toews, Assistant Attorney General, of counsel), for appellants.

Barry A. Schultz, of Schultz & Winick, of Chicago, for appellee.

JUSTICE EGAN delivered the opinion of the court:

Plaintiff was discharged from her employment and sought unemployment compensation. The Board of Review of the Department of Employment Security (Board) denied plaintiff's claim and adopted the decision of the hearings referee. On review, the circuit court reversed the administrative decision, finding it was against the manifest weight of the evidence. On appeal, the Board maintains that its decision was not against the manifest weight of the evidence.

Plaintiff was a production supervisor at a facility operated by Borden, Inc., in Northbrook, Illinois. Plaintiff was discharged for violations of the company's safety rules.

The record shows that on January 25, 1992, plaintiff was at work, but production was halted for several hours. One of the production machines, a cartoner, was jamming. The machine opened cartons so they could be filled. After unsuccessfully attempting to contact her immediate supervisor and the maintenance manager, plaintiff put her hands into the machine to manually extract cartons that did not open so the machine would not jam and production could commence.

However, in order to manually extract the cartons plaintiff had to bypass a safety system on the machine by switching off a moveable plastic safety shield which normally would have prevented her reaching into the machine. Plaintiff admitted that by deactivating the safety device and reaching into the machine she violated company safety rules. Plaintiff testified that she did so in order to complete a production schedule set by her employer even though she was fully aware of the danger.

At the administrative proceedings the employer's representative indicated that when he arrived at the plant on the day of the incident, the maintenance supervisor told him of plaintiff's conduct and indicated that he had told her that her conduct was unsafe. When the representative then told her that she could not operate the machine as she was doing, she replied that it was her safety alone at stake. Plaintiff continued briefly to operate the machine and then finally stopped. She also later explained to him that she had done so only in frustration of not being able to complete her production schedule.

The hearings referee concluded that plaintiff violated employee safety rules, and while her intent was to benefit her employer, her actions were misconduct disqualifying her from unemployment compensation. The Board adopted this conclusion. However, the circuit court found that the employer had not been harmed, noting that plaintiff had ceased her actions after speaking to the company representative.

■ Misconduct which disqualifies an employee from unemployment benefits is statutorily defined as the "deliberate and willful violation" of an employer's work rule which harms the employer. (820 ILCS 405/602(A) (West 1992).) The Board argues that its evaluation that plaintiff's actions constituted misconduct was appropriate because plaintiff's actions deliberately subjected her to potential harm by violating a company work rule and set a very unfavorable example for the employees she was supervising. The Board asserts that plaintiff's actions were indeed harmful to her employer because she placed herself in danger of serious injury, thereby increasing the employer's potential for having to cover the costs of any injury.

Conversely, plaintiff argues that only actual and not potential future harm is within the statutory ambit of misconduct, and her knowing safety-rule violations possibly placed only her and not others in danger. Further, plaintiff claims that her safety-rule violations were merely due to an error in her supervisory judgment and not an intentional violation, and her actions were dictated by her good-faith desire to complete her job assignment.

■ In our opinion, the evidence shows that plaintiff's violations of safety rules were knowing and deliberate. The evidence also suggests that the safety rules were reasonable and designed to safeguard employees. To this point plaintiff's actions fell within the criteria used in defining misconduct. (See *Adams v. Ward* (1990), 206 Ill. App. 3d 719, 724-25, 565 N.E.2d 53.) In regard to the question of employer harm, we are of the opinion that plaintiff's conduct should be viewed in the context of potential harm and not in the narrow context of actual harm. (*Adams v. Ward*, 206 Ill. App. 3d at 730 (Rakowski, J., concurring).) In the present case, plaintiff was a production line supervisor who violated safety rules. Her example to her subordinates clearly created a situation which suggested to them that safety rules could be ignored. This, in itself, could result in harm to the employer. The circuit court erred in substituting its determination of harm to the employer for the conclusion reached by the Board. *McAllister v. Board of Review* (1994), 263 Ill. App. 3d 207, 211, 635 N.E.2d 596.

Accordingly, the judgment of the circuit court is reversed.

Judgment reversed.

RAKOWSKI and ZWICK, JJ., concur.