5-00-0426

Rule 23 Order filed
 NO. 5-00-0426

November 5, 2001;

Motion to publish granted
 IN THE

December 19, 2001.

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________

BRENDA MASON, ) Appeal from the

) Circuit Court of

Plaintiff-Appellant, ) Williamson County.  

)

v. ) No. 99-MR-57

)

THE DEPARTMENT OF PUBLIC HEALTH )

and DR. JOHN R. LUMPKIN, Director, ) Honorable

) Phillip G. Palmer, 

Defendants-Appellees.   ) Judge, presiding.  

___________________________________________________________________________

JUSTICE HOPKINS delivered the opinion of the court:  

Brenda Mason (plaintiff) appeals from the trial court's affirmance of a final order of the Department of Public Health (the Department) finding that plaintiff abused a nursing home resident.  The Department's decision was based upon the recommendation of an administrative law judge (ALJ).  Plaintiff argues (1) that the ALJ's finding that plaintiff's conduct was not an isolated incident is against the manifest weight of the evidence, (2) that the ALJ's finding that plaintiff's conduct was in furtherance of teasing a nursing home resident is against the manifest weight of the evidence, and (3) that the ALJ's conclusion that plaintiff was guilty of abusing a nursing home resident is clearly erroneous.  We affirm.

FACTS

At the evidentiary hearing before the ALJ, the following pertinent evidence was presented.  Lenitta Chandler testified that she was employed as a certified nurse's aide (CNA) at Saint Anne's Health Care Center (Saint Anne's), where she worked with plaintiff, who is also a CNA.  Saint Anne's is a residential living facility for the elderly.  Chandler described Saint Anne's as a "traditional nursing home setting."  While employed at Saint Anne's, Chandler was acquainted with an elderly female resident by the name of Lola Juergens, who was alert but had some dementia.  Other witnesses testified that Juergens suffered from Parkinson's disease.  

Chandler described the incident for which plaintiff was accused of abuse, which  involved Juergens, plaintiff, and another CNA, Susan Kastner.  Chandler testified that she walked into a community room where the residents watch television with the staff.  When Chandler walked into the room, Juergens was sitting in a chair with a tray table in front of her.  On the tray table was a glass of juice.  Chandler testified that Kastner was sitting to the right of Juergens and plaintiff was sitting to the left of Juergens. 

Chandler testified that when she entered the room, Kastner was poking Juergens in the ribs and that plaintiff "was doing this with her hair."  When the attorney for the Department asked Chandler if Kastner and plaintiff were bothering Juergens by touching and poking her, Chandler replied affirmatively.  Chandler stated that Juergens threatened to throw her glass of juice on "her," but Chandler did not specify whether "her" referred to Kastner or plaintiff.  Chandler testified that plaintiff continued "doing this" with Juergens' hair, that Kastner continued poking Juergens in the ribs, and that Juergens then threw the glass of juice on plaintiff.  

Chandler testified that after Juergens threw the juice on plaintiff, plaintiff became "very upset [and] jumped up and started cussing."  According to Chandler, plaintiff said to Juergens:  "God damn you.  Look what you did to my pants.  I ought to take you outside in the ice and let you freeze."  Chandler also testified that plaintiff called Juergens a bitch.  Chandler described Juergens' demeanor after the incident as "shaking a great deal."

Connie Res, a CNA at Saint Anne's for 26 years prior to the hearing, testified that she was on duty at the time of the incident.  Res testified that she witnessed Kastner poking Juergens in the ribs.  Res testified that Juergens told Kastner to quit but that Kastner "kept it up."  Res testified that she saw plaintiff "reach up and rub [Juergens] on the top of the head."  Res also agreed that plaintiff told Juergens "it will be okay" as plaintiff rubbed her hand over Juergens' head one time.  Res testified that Juergens threatened to pour the juice on plaintiff and then did so. 

Kastner testified that her action of poking Juergens in the ribs initially caused Juergens to be upset and that Juergens was already upset when plaintiff came into the room and sat beside Juergens.  Kastner testified that when plaintiff sat down, she rubbed Juergens' head and said:  "It will be okay, Honey.  It will be okay, Honey."  Kastner testified that after Juergens threw the juice on plaintiff, plaintiff said, "God damn you, [Juergens], you threw juice on me."  When Kastner was asked whether she normally teased residents, she replied, "No, not always; but once in a while, we have; yeah."  Kastner denied that plaintiff said anything to Juergens about leaving her out in the cold.  

Mark Trevathan was the registered nurse on duty the day of the incident.  He testified that no one reported any problem with Juergens, plaintiff, or Kastner that day.  He testified that he saw Juergens that day, after the incident, and he did not notice anything different about her behavior.  

On July 7, 1999, the ALJ issued his report and recommendation, finding plaintiff subject to the jurisdiction of the Department pursuant to the Nursing Home Care Act (the Act) (210 ILCS 45/1-101 
et seq. 
(West 2000)), because she was employed as a CNA at Saint Anne's at the time of the alleged abuse–January 9, 1999.  The ALJ determined that under section 1-103 of the Act, abuse is defined as any physical or mental injury or sexual assault inflicted on a nursing home resident other than by accidental means (210 ILCS 45/1-103 (West 2000)).  The ALJ further found that under the Illinois Administrative Code, verbal abuse may be established by evidence that (1) the CNA used oral, written, or gestured language, (2) the language was disparaging or derogatory, and (3) the language was within the hearing or seeing of the resident (77 Ill. Adm. Code §300.330 (2000)).  The ALJ found also that mental abuse is established by acts including humiliation, harassment, threats of punishments or deprivation, or offensive physical contact.  See 77 Ill. Adm. Code §300.330 (2000).  

The ALJ's report, in relevant part, is as follows:

"Based upon the uncontroverted facts cited herein and my evaluation of the credibility of the witnesses, I find that the [Department] has established by a preponderance of the evidence verbal abuse and mental abuse under [section 1-103 of the Nursing Home Care Act] and 77 Ill. Adm. [Code] §300.330 on the part of [plaintiff].  

CNA Kastner admitted that she poked Juergens in the ribs 'to tease' her.  There is no rational explanation that would make such conduct a part of a CNA's appropriate care of a resident[,] and no explanation was offered as part of the evidence.  Kastner was in fact on her break at the time.  It is disturbing that Kastner could poke a resident in a room full of CNAs and the only initial response from any of them was from [plaintiff] patting the resident on the head and saying[,] "It will be okay[,] Honey[;] it will be okay".  This leads me to the conclusion that this conduct was not an isolated incident.  Kastner admitted as much in her testimony.  [Plaintiff's] patting the resident on the head and her comments were not made for the purposes of soothing the resident, but to further the teasing.  Under these circumstances, [plaintiff's] actions were disparaging, derogatory[,] and humiliating.

The claimant did not establish by [a] preponderance of the evidence that [plaintiff] called the resident a 'bitch', verbally threatened the resident, or physically abused the resident as charged.  I find that the comments made by [plaintiff] after being hit with the orange juice did not amount to verbal abuse under the statute or regulations."

On August 30, 1999, the Department adopted and upheld the ALJ's recommendations.  On June 12, 2000, the circuit court of Williamson County issued an order affirming the Department's order.  Plaintiff appeals from the trial court's order.  

ANALYSIS

1.  Finding That Plaintiff's Actions on January 9, 1999, Were Not an Isolated Incident

Plaintiff contends that there is insufficient evidence to support the ALJ's finding that plaintiff's conduct was not an isolated event.  The Department counters that there is sufficient evidence to support that finding but that, even if there is not, it does not matter, because plaintiff cites no legal authority in support of her contention.  The Department points out that there is no rule requiring a course or pattern of abusive conduct toward nursing home residents in order for abuse to be found and that any such rule would contradict the Act's public policy, which is to protect nursing home residents from abusive and degrading treatment, regardless of how infrequent or mild that treatment may be (
County of De Witt v. American Federation of State, County & Municipal Employees, Council 31
, 298 Ill. App. 3d 634, 638 (1998)).  We agree with the Department.

Abuse, for the purpose of determining whether there has been a violation of the Act, is defined as:

"[A]ny physical or mental injury or sexual assault inflicted on a resident other than by accidental means in a facility."  210 ILCS 45/1-103 (West 2000); 77 Ill. Adm. Code §300.330 (2000).

Section 300.330 of Title 77 of the Illinois Administrative Code goes on to specify what constitutes a mental injury:

"Mental injury arises from the following types of conduct:

Verbal abuse refers to the use by a licensee, employee[,] or agent of oral, written[,] or gestured language that includes disparaging and derogatory terms to residents or within their hearing or seeing distance, regardless of their age, ability to comprehend[,] or disability.

Mental abuse includes, but is not limited to, humiliation, harassment, threats of punishment or deprivation, or offensive physical contact by a licensee, employee[,] or agent."  77 Ill. Adm. Code §300.330 (2000).  

Given these definitions of abuse, we cannot find support for plaintiff's contention that abuse must consist of more than an isolated incident.  The ALJ was not required under the Act to find that plaintiff's conduct consisted of more than an isolated event to find plaintiff  guilty of abusing Juergens, a nursing home resident.  Furthermore, Illinois has an "established public policy" of protecting the elderly from abuse and harm, and that policy would be thwarted if those caring for nursing home residents were allowed to abuse their elderly patients without a fear of reprisal simply because the abuse happened only once.  
County of De Witt
, 298 Ill. App. 3d at 637 (the trial court properly vacated an arbitrator's award reinstating a nursing home employee charged with striking a resident, even though the employee's conduct consisted only of one incident of striking and caused no apparent injury to the resident).  

In the instant case, the ALJ's conclusion that plaintiff's conduct was not an isolated incident was not essential to his finding of abuse.  Based upon the law as stated in the Act and the public policy of protecting nursing home residents, we hold that it does not matter whether the incident involving plaintiff was an isolated incident or a part of a larger pattern of abuse.

2.  Characterization of Plaintiff's Conduct as "Teasing"

Plaintiff argues that the ALJ's finding that plaintiff's actions were in furtherance of Kastner's teasing of Juergens gives "a dark interpretation to innocuous words and gestures that is not justified by the facts."  

Our review of administrative findings and conclusions of fact, such as this, is limited to a determination of whether the findings are against the manifest weight of the evidence.  
City of Belvidere v. Illinois State Labor Relations Board
, 181 Ill. 2d 191, 205 (1998).  Those findings and conclusions of fact are deemed to be 
prima facie 
true and correct.  
City of Belvidere
, 181 Ill. 2d at 205.  On review, we are not allowed to substitute our judgment for that of the ALJ, nor may we weigh the evidence.  
City of Belvidere
, 181 Ill. 2d at 205.  The ALJ's conclusions of fact are to be accepted on review unless the opposite conclusion is clearly evident.  
City of Belvidere
, 181 Ill. 2d at 205.

The Department responds to plaintiff's argument by pointing out that the uncontradicted eyewitness testimony of Chandler, Res, and Kastner supplied ample evidence from which the ALJ could reasonably conclude that plaintiff was participating in Kastner's  teasing when plaintiff rubbed Juergens on the head and said:  "It will be okay, Honey.  It will be okay, Honey."  The Department maintains that it does not matter that Kastner started the teasing but only that plaintiff's actions after Juergens was already agitated by Kastner could reasonably be interpreted as furthering Kastner's teasing.  

We agree with the Department that there was ample evidence from which the ALJ could reasonably conclude that plaintiff's words and actions meet the definition of mental abuse, which includes but is not limited to humiliation, harassment, and offensive physical contact, and the definition of verbal abuse, which includes disparaging or derogatory language or gestures within the hearing or seeing of residents, regardless of their age, ability to comprehend, or disability (77 Ill. Adm. Code §300.330 (2000)).  The ALJ heard the witnesses testify and observed their demeanor when they described the incident.  Clearly, the manner in which plaintiff was rubbing Juergens' head and speaking to her is a significant factor in how plaintiff's actions could be interpreted.  It was certainly possible for the ALJ to interpret plaintiff's actions as intended to add to Kastner's humiliation and degradation of Juergens.  Therefore, the ALJ's conclusion that plaintiff was abusing Juergens by teasing her is not against the manifest weight of the evidence.  

3.  Legal Conclusion of Abuse

Plaintiff finally argues that the ALJ erroneously determined that plaintiff's actions amounted to abuse.  Plaintiff contends that there is no evidence that Juergens was injured by anything plaintiff said or did.  According to plaintiff, an injury to the resident is a necessary element of a finding of abuse.  Plaintiff cites the general definition of abuse from the Act–abuse means "any physical or mental injury or sexual assault inflicted on a resident other than by accidental means" (210 ILCS 45/1-103 (West 2000)).  Plaintiff also relies upon 
Alden Nursing Center-Morrow, Inc. v. Lumpkin
, 259 Ill. App. 3d 1027 (1994), in support of this argument.  Plaintiff is incorrect.  Neither the Act nor the 
Lumpkin
 case supports her contention.

First, the Illinois Administrative Code clearly sets forth the rule that "[m]ental injury arises from" verbal abuse, which means disparaging or derogatory language or gestures within the hearing or seeing of the resident, and from mental abuse, which means, 
inter alia
, humiliation, harassment, or offensive physical contact.  77 Ill. Adm. Code §300.330 (2000).  Since a mental injury is defined to arise from conduct that is disparaging, derogatory, humiliating, harassing, or offensive, there was no reason for the ALJ to look for additional evidence of injury once he determined that plaintiff's behavior was disparaging, derogatory, and humiliating.

Our overriding obligation in interpreting and applying statutory or regulatory provisions is to give effect to the legislative intent by first construing the plain meaning of the statutory language.  See 
Davis v. Toshiba Machine Co., America
, 186 Ill. 2d 181, 184 (1999).  Where the statutory or regulatory provisions are clear and unambiguous, a court must give that plain language effect as written, without reading into it exceptions, limitations, or conditions that the legislature did not express.  See 
Davis
, 186 Ill. 2d at 184-85.  The ALJ properly applied the clear and unambiguous language of section 300.330 in finding that plaintiff's conduct amounted to abuse.  

Second, the 
Lumpkin
 case does not compel a different interpretation of the law.  In that case, a nursing home sought the review of a ruling of the Department that found violations of the Act by the nursing home.  
Lumpkin
, 259 Ill. App. 3d at 1028.  The circuit court reversed the findings of the Department and the hearing officer.  
Lumpkin
, 259 Ill. App. 3d at 1031.  Although the 
Lumpkin
 case deals with provisions of the Act that pertain to regulations for nursing homes, rather than for nursing home employees, as in the instant case, the definitions of abuse and mental injury are essentially the same as those contained in section 300.330.  See 77 Ill. Adm. Code §260.1000 (2000).  However, to find a violation of the Act when it is the nursing home that is charged instead of the nursing home's employee, there is an additional requirement that the nursing home must have operated or maintained its facility in a manner that is "directly threatening to the health, safety[,] or welfare of a resident" (210 ILCS 45/1-130 (West 2000); 77 Ill. Adm. Code §300.274(b)(2) (2000)).  See 
Lumpkin
, 259 Ill. App. 3d at 1032.  

Therefore, it is not surprising that in its reversal of the trial court's decision, the court in 
Lumpkin
 set forth the evidence of the injury to the resident.  In explaining that reversal, the appellate court found that there was evidence that the nursing home's practices amounted to "a direct threat to [the resident's] health, safety, and welfare, as sufficient for a 'Type B' violation."  
Lumpkin
, 259 Ill. App. 3d at 1033.  Thus, the 
Lumpkin
 decision is inapposite in that it deals with a violation of the rules regarding nursing home practices that include a requirement not found in the rules pertaining to violations committed by nursing home employees. 

Therefore, we reject plaintiff's contention that evidence of an injury to a resident is necessary beyond a finding that the resident was subjected to disparaging, derogatory, humiliating, harassing, or offensive conduct by a nursing home employee.

CONCLUSION

For all of the reasons stated, we affirm the trial court's affirmance of the Department's order finding that plaintiff committed abuse within the meaning of the Act.

Affirmed.

 

GOLDENHERSH and WELCH, JJ., concur.