FIFTH DIVISION
July 27, 2007

No. 1-06-2298

| | | |
|---|---|---|
| JANIE LIVINGSTON, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| THE DEPARTMENT OF | ) | |
| EMPLOYMENT SECURITY; | ) | |
| DIRECTOR OF EMPLOYMENT SECURITY; | ) | |
| THE BOARD OF REVIEW; | ) | |
| and LAKEVIEW NURSING AND | ) | |
| REHABILITATION c/o | ) | |
| PERSONNEL PLANNERS, | ) | Honorable |
| | ) | Sheldon Gardner, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE GALLAGHER delivered the opinion of the court:

Plaintiff Janie Livingston appeals from the denial of her claim for unemployment insurance benefits under the Unemployment Insurance Act (Act) (820 ILCS 405/100 et seq. (West 2004)). Defendant Lakeview Nursing and Rehabilitation (Lakeview) discharged plaintiff from her job as a certified nursing assistant after she allegedly slapped the face of an elderly resident, Dolores Johnson.

On appeal, plaintiff contends that she neither slapped

1-06-2298

Johnson nor willfully engaged in work-related misconduct.  We affirm.

Plaintiff worked for Lakeview for 25 years, from June 1980 until her discharge in September 2005.[1]

A telephone hearing was held on November 23, 2005.  During the telephone hearing, four witnesses testified.

Melissa Casillas of Lakeview's human resources department testified that plaintiff worked as a certified nursing assistant from June 7, 1980, until she was discharged on September 15, 2005.

Mary Langel, Lakeview's director of nursing, testified that she discharged plaintiff on September 15, 2005.  Langel told plaintiff that the reason for her discharge was that on September 5, plaintiff had abused a resident, Dolores Johnson, by slapping Johnson's face.  Langel did not witness the incident.  When the referee asked Langel what plaintiff said after Langel told her she had slapped a resident, Langel testified:

"She said that she did not slap her.

That she did put her hand--face, tell her

---

[1]  The record reflects several different dates in September 2005 for the date of the incident and the date plaintiff was discharged.

-2-

> that she couldn't behave that way.  The
> resident was angry with [plaintiff] because
> she didn't want to get up.
>
>                    * * *
>
> She said that she put her hand on the
> resident's face and said you can't do that.
> We don't act like that, or something to those
> words."

Langel testified that plaintiff demonstrated what she had done, and that plaintiff's remarks to her were a basis for discharge because the way plaintiff placed her hand on the resident's face and scolded her was inappropriate.  Langel testified:

> "She put her hand on her face kind of
> like holding her face, you know what I mean?
> And she said you can't act that way or we
> don't act this way, something to that respect
> [sic]."

Langel testified further that plaintiff had been previously warned about inappropriate treatment of a resident in August 2005.  Langel explained that plaintiff worked the night shift, and that when the day shift arrived, they found that a resident

had been tied to the bed. When Langel asked plaintiff about that, plaintiff replied that the resident had probably done it herself. Langel testified that plaintiff had been there "a very long time" and that, therefore, Langel decided to move plaintiff to another floor where the residents were more alert and oriented, and to observe plaintiff closely.

Gwendolyn King testified that she was a certified nursing assistant and that she witnessed the slapping incident, which she said occurred in Dolores Johnson's room at approximately 7 a.m. on September 11, 2005. King had just left the lunch room near Johnson's room and was taking a resident to the bathroom. When King passed by Johnson's door, King heard Johnson arguing loudly and yelling, "'[S]top it, stop doing that.'" Johnson was sitting in her wheelchair. To King's knowledge, plaintiff did not have a hearing problem. Johnson was loud with "a lot of" the staff. Johnson was yelling. Plaintiff was not yelling. King did not hear plaintiff say anything, but whatever Johnson had said "apparently made [plaintiff] angry" because as King passed by the door, she saw plaintiff's hand come down and slap Johnson across the face. King testified that she actually saw plaintiff slap Johnson. King also heard the slap. Johnson, who was "very much" mentally competent, appeared "dumbfounded." King reported the

incident to her charge nurse.  Although King only saw plaintiff coming and going because they worked different shifts, King recognized plaintiff and had said good morning to her in the hall just before the incident occurred.  King did not see a bruise on Johnson from the slap.  Johnson had a little redness to the side of her cheek, but Johnson always had pink cheeks anyway.

Plaintiff testified that she did not slap Johnson and that she only "touched her face."  Plaintiff testified:

>"I took my index finger and I touched her on the face, said that's not nice to do. It's not nice to fight people when they're trying to get you up for breakfast."

When asked if it was necessary to touch Johnson's face, plaintiff testified:

>"Well she had made a brace at me with both her hands and she had a very unusual look on her face.  And I was trying to calm her down."

When asked if she thought it was necessary to touch Johnson to calm her down, plaintiff testified, "No."  Plaintiff testified that she needed to calm Johnson down because Johnson looked like she was going to hit plaintiff.  Plaintiff testified that usually

she and Johnson talked during the night, and that she usually tapped Johnson's jaw. Plaintiff admitted that it was "not really" appropriate for her to touch Johnson on the face. Plaintiff did so to calm her down and keep her "low key." Plaintiff talked to her at the same time. Plaintiff testified, "I don't think I did wrong." Plaintiff agreed that she was not supposed to touch a patient unless it was necessary for the patient's care. Plaintiff testified that by touching Johnson she was caring for her, but plaintiff admitted that it was neither necessary nor appropriate to touch Johnson in that way to care for her. Plaintiff testified that she knew she should not touch Johnson unless it was necessary and that it was not necessary in this case. Plaintiff did not think that she had done anything wrong. Johnson was being a little combative, but plaintiff did not report that to the nurse. Plaintiff tried to do the job that she was assigned to do. Plaintiff remembered that she told the local office that she had tapped Johnson on the jaw with her index finger and that she was aware of the policy.

King then testified that she saw plaintiff slap Johnson "with the back of her hand." King testified further, "Cause she was standing sideways so she just took it back and just kind of like slapped her."

Plaintiff then testified again that she did not slap Johnson.

On November 28, 2005, the referee stated in a written decision that the issue was whether plaintiff was discharged for misconduct connected with work within the meaning of section 602(A) of the Act. 820 ILCS 405/602(A) (West 2004). The referee found that plaintiff was discharged because she had "slapped a patient on the face, contrary to the employer's known rules." The referee stated that plaintiff was not eligible for unemployment insurance benefits because she knew that it was improper to slap a patient on the face but did so anyway, and her conduct was within her control. Plaintiff filed a pro se appeal in which she argued that she did not slap the patient, and that after 25 years of work at the same place, she would know better.

The Board of Review of the Department of Employment Security (Board) affirmed the referee's decision. The Board found that the referee's decision was supported by the record and the law. The Board incorporated the referee's decision as part of the Board's decision.

Plaintiff sought administrative review in the circuit court. See 735 ILCS 5/3-101 et seq. (West 2004).

The circuit court entered an order affirming the Board's

decision. The record does not contain a transcript of any of the proceedings in the circuit court. Plaintiff has appealed from the circuit court's order.

On appeal, plaintiff contends that she did not slap Johnson or willfully engage in work-related misconduct. Plaintiff argues that she "[a]t best" "violated a reasonable rule of the nursing home regarding inappropriate touching of the resident, by using bad judgment." Plaintiff asserts that she considered the touching to be a form of care to "calm down a highly agitated resident," and an attempt to help the resident, not a deliberate, willful violation of a rule. Plaintiff concludes that the manifest weight of the evidence does not show deliberate, willful conduct on her part.

The Board responds that its decision denying unemployment insurance benefits should be affirmed because its finding that plaintiff slapped a patient was not against the manifest weight of the evidence, and its conclusion that the slap constituted work-related misconduct was not clearly erroneous.

We have reviewed the record and find no basis to disturb the judgment of the circuit court.

This court reviews the Board's decision. Perto v. Board of Review, 274 Ill. App. 3d 485, 491-92 (1995). The Board is the

trier of fact.  Nykaza v. Department of Employment Security, 364 Ill. App. 3d 624, 628 (2006).  The Board's purely factual findings are "prima facie true and correct" (see Horton v. Department of Employment Security, 335 Ill. App. 3d 537, 540 (2002);  735 ILCS 5/3-110 (West 2004);  820 ILCS 405/1100 (West 2004)), are reviewed under the manifest weight of the evidence standard (Carpetland U.S.A., Inc. v. Illinois Department of Employment Security, 201 Ill. 2d 351, 369 (2002)), and will not be reversed unless they are against the manifest weight of the evidence (In re Austin W., 214 Ill. 2d 31, 56 (2005)).

> "Courts may not consider evidence outside of the record of the administrative appeal, reweigh the evidence to determine where the preponderance lies, or evaluate the credibility of the witnesses."  In re Austin W., 214 Ill. 2d at 56.

If the facts are not in dispute, the plaintiff's eligibility for unemployment insurance benefits is a question of law and is reviewed de novo.  International Union of Operating Engineers, Local 48 v. Illinois Department of Employment Security, 215 Ill. 2d 37, 62 (2005).  The Board's decisions involving purely questions of law are reviewed de novo.  Carpetland U.S.A., Inc.,

1-06-2298

201 Ill. 2d at 369.

If the Board's decision presents a mixed question of law and fact, it is subject to an intermediate standard of review for clear error. Carpetland U.S.A., Inc., 201 Ill. 2d at 369. A mixed question of law and fact involves the legal effect of a set of facts. Manning v. Department of Employment Security, 365 Ill. App. 3d 553, 557 (2006); Moss v. Department of Employment Security, 357 Ill. App. 3d 980, 984 (2005).

> "Stated another way, a mixed question is one in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or whether the rule of law as applied to the established facts is or is not violated." Moss, 357 Ill. App. 3d at 984.

A mixed question of law and fact is subject to an intermediate standard of review, the "clearly erroneous" standard of review. AFM Messenger Service, Inc. v. Department of Employment Security, 198 Ill. 2d 380, 392 (2001); Manning, 365 Ill. App. 3d at 557; Moss, 357 Ill. App. 3d at 984; Chicago Messenger Service v. Jordan, 356 Ill. App. 3d 101, 106 (2005).

-10-

The "clearly erroneous" standard of review "is largely deferential to the agency decision." Chicago Messenger Service, 356 Ill. App. 3d at 106-07.

> "Under the clearly erroneous standard, we
> give somewhat less deference to the agency
> than we would if the decision related solely
> to a question of fact, because the decision
> is based on fact-finding that is inseparable
> from the application of law to fact."
> Carpetland U.S.A., Inc., 201 Ill. 2d at 369.

The Board's decision concerning a mixed question of law and fact is clearly erroneous only if, based upon the entire record, the court of review definitely and firmly believes that a mistake has occurred. Carpetland U.S.A., Inc., 201 Ill. 2d at 369; AFM Messenger Service, Inc., 198 Ill. 2d at 395; Chicago Messenger Service, 356 Ill. App. 3d at 107; Horton, 335 Ill. App. 3d at 540. A court of review will not reweigh the evidence or substitute its judgment for that of the Board. Horton, 335 Ill. App. 3d at 540.

The facts, as stated above, were disputed. King testified that the incident occurred on September 11, 2005, a different date from the date specified by Langel. But King testified

further that she knew who plaintiff and Johnson were, she heard Johnson arguing and yelling, and she saw and heard plaintiff slap Johnson. Plaintiff testified that she did not slap Johnson, she only touched Johnson to calm her down. The Board's finding that plaintiff had slapped Johnson, an elderly nursing home resident, was not against the manifest weight of the evidence.

Even assuming that plaintiff touched instead of slapped Johnson, plaintiff conceded that the touching was neither necessary nor appropriate. She attributed it to bad judgment on her part, not deliberate or willful misconduct. However, the Board's conclusion that plaintiff was disqualified due to work-related misconduct was not clearly erroneous or contrary to law. Section 602(A) of the Act, entitled "Discharge for misconduct-- Felony," states in part:

> "An individual shall be ineligible for benefits for the week in which he has been discharged for misconduct connected with his work and, thereafter, until he has become reemployed ***. *** For purposes of this subsection, the term 'misconduct' means the deliberate and willful violation of a reasonable rule or policy of the employing

> unit, governing the individual's behavior in
> performance of his work, provided such
> violation has harmed the employing unit or
> other employees or has been repeated by the
> individual despite a warning or other
> explicit instruction from the employing
> unit."  820 ILCS 405/602(A) (West 2004).

See also Manning, 365 Ill. App. 3d at 557.

A reasonable rule concerns "standards of behavior which an employer has a right to expect" from an employee.  Bandemer v. Department of Employment Security, 204 Ill. App. 3d 192, 195 (1990).  Willful conduct stems from an employee's awareness of, and conscious disregard for, a company rule.  Wrobel v. Department of Employment Security, 344 Ill. App. 3d 533, 538 (2003); Lachenmyer v. Didrickson, 263 Ill. App. 3d 382, 389 (1994). Harm need not be actual harm and can consist instead of potential harm.  Greenlaw v. Department of Employment Security, 299 Ill. App. 3d 446, 448 (1998); Brodde v. Didrickson, 269 Ill. App. 3d 309, 311 (1995).

Here, it was not clearly erroneous or contrary to law for the Board to conclude that plaintiff willfully and deliberately violated a reasonable policy and caused potential harm to

Lakeview.

Plaintiff was a certified nursing assistant who worked with elderly nursing home residents. Plaintiff was seen slapping one of the elderly nursing home residents. Plaintiff was aware of the policy against inappropriate touching. Instead of making an effort to comply with Lakeview's requirements, plaintiff went ahead and slapped, or inappropriately touched, Johnson's face. Johnson was elderly and was sitting in a wheelchair. Plaintiff's conduct was conscious, willful, and deliberate.

At a minimum, a certified nursing assistant should not be allowed to slap the face of an elderly resident of a nursing home or inappropriately touch the face of an elderly resident of a nursing home. Therefore, a policy prohibiting certified nursing assistants from slapping, or inappropriately touching, the face of an elderly resident of a nursing home is reasonable. Plaintiff has conceded on appeal that the policy is reasonable.

Plaintiff's conduct was not repeated after a prior warning, because she had not received any prior warning about slapping or inappropriately touching patients. She had received a prior warning about restraining a patient. But she had received no prior warning specifically about slapping or inappropriately touching a patient, which from plaintiff's own testimony that she

usually tapped Johnson's jaw, appears not to have been a one-time occurrence.  Therefore, the issue boils down to harm.

Plaintiff's conduct caused actual harm to Lakeview.  Another certified nursing assistant, King, was required to take time away from her duties with patients to report what she had seen and heard.  This temporarily hindered King's ability to do her job, temporarily deprived Lakeview of King's services, and amounted to actual harm within the meaning of section 602(A).  See Caterpillar, Inc. v. Department of Employment Security, 313 Ill. App. 3d 645, 655 (2000).  Furthermore, a nursing home has a duty to provide an environment free from abuse.  See Mason v. Department of Public Health, 326 Ill. App. 3d 616, 620, 624 (2001) ("abusive and degrading treatment," "disparaging, derogatory, humiliating, harassing, or offensive conduct by a nursing home employee");  see also 210 ILCS 45/2-107, 1-103 (West 2004).

Even assuming that plaintiff's conduct did not cause actual harm to Lakeview, potential harm may amount to misconduct.  See Greenlaw, 299 Ill. App. 3d at 448; Brodde, 269 Ill. App. 3d at 311.  However, there is a split in the authorities as to whether the prospect of future harm constitutes harm within the meaning of section 602(A) of the Act.

For example, in <u>Bandemer</u>, 204 Ill. App. 3d at 195, the misconduct consisted of a sales manager's failure to notify the store manager that she was sick and her failure to open the store that day. The appellate court observed that potential customers could not shop at the store and that the threat of future financial loss was harmful to the employer.

In <u>Winklmeier v. Board of Review of the Department of Labor</u>, 115 Ill. App. 3d 154, 155-56 (1983), the misconduct consisted of filing false medical claims, which could cause higher insurance costs and financial loss to the employer.

By way of contrast, in <u>Zuaznabar v. Board of Review of the Department of Employment Security</u>, 257 Ill. App. 3d 354, 356-57 (1993), which plaintiff cited, the misconduct consisted of negligent and careless driving that did not actually harm the employer.

In <u>Kiefer v. Department of Employment Security</u>, 266 Ill. App. 3d 1057, 1062-63 (1994), the misconduct consisted of selling insurance, which carried only a remote and speculative risk of harm.

<u>Kiefer</u> and <u>Zuaznabar</u> are distinguishable from the present case. In the present case, the misconduct was not merely careless or negligent, unlike <u>Zuaznabar</u>, and did not carry merely

a remote risk of harm to Lakeview, unlike Kiefer; rather, the misconduct consisted of deliberately slapping (or deliberately and inappropriately touching) the face of an elderly woman sitting in a wheelchair. Plaintiff, a certified nursing assistant at Lakeview for 25 years, was aware that her conduct was inappropriate and in contravention of Lakeview's policy. The misconduct in this case was willful and deliberate, and the potential harm to Lakeview was not remote. The potential harm caused by such conduct included Lakeview's potential exposure to tort liability, and potential damage to Lakeview's reputation. It was not clearly erroneous or contrary to law for the Board to conclude that it was reasonable for a nursing home to require that its certified nursing assistants not slap or inappropriately touch the residents of the nursing home, and particularly elderly residents in wheelchairs. This was neither an isolated occurrence nor an accident: plaintiff's conduct was deliberate and willful, in conscious contravention of Lakeview's policy against inappropriate touching, and caused actual and potential harm to Lakeview. The Board's conclusion that plaintiff had committed disqualifying misconduct was not clearly erroneous or contrary to law.

The cases plaintiff cited are distinguishable. We have

already discussed Zuaznabar, 257 Ill. App. 3d at 356-57, in which the misconduct consisted of careless and negligent driving.

In another case cited by plaintiff, Crowley v. Department of Employment Security Board of Review, 190 Ill. App. 3d 900, 903-04 (1989), the alleged misconduct consisted of a bus driver's refusal to discuss customer complaints when he was off duty and not being paid. The appellate court held that this was not misconduct because the bus driver was entitled to be compensated for the time he spent off-duty discussing customer complaints, and because the bus driver had "a justified, good-faith belief" that his employer was violating a statute by not compensating him for the off-duty meetings. In the present case, plaintiff admitted that her conduct was neither necessary nor appropriate. Therefore, she cannot reasonably contend that it was in good faith. Even if she did act in good faith, her conduct was not justified. The bus driver's conduct was justified because a statute required that he be compensated for the time spent in the off-duty meetings.

In Caterpillar, Inc. v. Fehrenbacher, 286 Ill. App. 3d 614, 622-23 (1997), the alleged misconduct, displaying a pro-union sign in a truck, was not work-related because it did not occur at the workplace, did not relate to the performance of the

employee's job, and did not affect the performance of his work. Here, plaintiff's conduct in slapping or inappropriately touching Johnson's face was work-related because it occurred at the workplace and related to plaintiff's performance of her job. We have considered, and rejected, plaintiff's arguments and case citations.

For the foregoing reasons, we affirm the judgment of the circuit court and hold that plaintiff was not entitled to unemployment insurance benefits.

Affirmed.

O'BRIEN, P.J., and O'MARA FROSSARD, J., concur.