# Illinois Official Reports

## Appellate Court

---

### *E-Z Movers, Inc. v. Rowell*, 2016 IL App (1st) 150435

---

| | |
|---|---|
| Appellate Court Caption | E-Z MOVERS, INC., Plaintiff-Appellee, v. JAY ROWELL, Director of Employment Security, and THE DEPARTMENT OF EMPLOYMENT SECURITY, Defendants-Appellants. |
| District & No. | First District, Second Division<br>Docket No. 1-15-0435 |
| Rule 23 order filed<br>Rule 23 order withdrawn<br>Opinion filed | June 28, 2016<br><br>July 27, 2016<br>August 2, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-L-14463; the Hon. Robert Lopez Cepero, Judge, presiding. |
| Judgment | Circuit court judgment reversed.<br>Director's decision reinstated. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Chicago (Carolyn E. Shapiro, Solicitor General, and Linda Boache-Ansah, Assistant Attorney General, of counsel), for appellants.<br><br>Ryan Helgeson and Wessels Sherman Joerg, both of Liszka, Laverty Seneczko, P.C., of Chicago, for appellee. |

JUSTICE SIMON delivered the judgment of the court, with opinion. Presiding Justice Pierce and Justice Neville concurred in the judgment and opinion.

## OPINION

¶ 1        Plaintiff, E-Z Movers, Inc., sought administrative review in the circuit court of Cook County of a decision by defendants, Illinois Department of Employment Security (IDES), and its Director, Jay Rowell (together, the Department). Pursuant to an audit and an administrative hearing, the Department determined that E-Z Movers failed to establish that the exemptions from "employment" contained in section 212 of the Unemployment Insurance Act (Act) (820 ILCS 405/212 (West 2006)) applied to the workers in question. The Department found that the workers were "employees" and not "independent contractors" and issued an assessment in the amount of $25,014.70 in unemployment insurance contributions against E-Z Movers. The Director upheld the Department's decision.

¶ 2        On administrative review, the circuit court reversed the Director's decision and concluded that the drivers and helpers were "independent contractors" and not "employees" under section 212 of the Act. The Department appeals, contending the circuit court erred in reversing the Director's decision. For the following reasons, we reverse the circuit court's judgment and affirm the Director's decision.

¶ 3                                BACKGROUND

¶ 4        E-Z Movers is a furniture moving company that hires drivers and helpers to perform physical labor. In 2009, after one of the E-Z Movers' workers sought unemployment insurance benefits from the Department, the Department realized that the company had not reported the workers' wages to it. The Department audited E-Z Movers for 2007 and 2008.

¶ 5        An administrative hearing was conducted before the Director's representative on October 25, 2011. The Department's auditor testified that E-Z Movers presented him with various 1099 tax forms for 2008. He concluded that 92 people, either drivers or helpers, should have been reported as employees. The auditor testified that the primary function of the business was to move furniture and noted that the drivers and helpers completed their services with moving trucks that were owned by E-Z Movers. The auditor stated that the 1099 recipients were not independently established in their own business. He also concluded that 89 drivers and helpers who had been classified as independent contractors in 2007 were actually employees.

¶ 6        Albert Stein, E-Z Movers' accountant, testified that "quite a few factors" would indicate that the drivers and the helpers were independent contractors and not employees. Stein stated that the drivers and the helpers "bear the risk of loss" of being responsible for payment if they make mistakes. For instance, if a truck driver accidentally drove into a ditch, the driver would have to pay for the tow truck to pull the truck out of a ditch. Stein stated that the drivers and helpers had the right to refuse to accept a job and were free to decide how to do the moving job.

¶ 7        When asked to about the factors listed in section 212 of the Act, Stein asserted that the drivers and helpers were not under E-Z Movers' direction and control because the company's

only input was to provide the job to the movers. Stein testified that the drivers and helpers were in the same business as E-Z Movers noting that the distinction was that the drivers and helpers did not go "about the business seeking customers [w]hereas E-Z Movers, the corporation, does seek customers." Stein was uncertain as to whether the majority of the drivers and helpers were independently established but he was familiar with one person who had "his reputation at stake in any job with any customer." Stein also asserted that the workers were not wholly dependent on E-Z Movers to continue to operate because they had the necessary skills and "those skills are mobile." Stein noted that E-Z Movers owned all the moving trucks. He stated that he was unsure whether E-Z Movers provided workers' compensation insurance for the drivers and helpers.

¶ 8    Arie Hagoel, E-Z Movers' president, testified that he made the decision to classify the particular drivers and helpers, who were skilled workers, as independent contractors. The unskilled workers who needed training were employees. Hagoel testified that the drivers and helpers preferred to be independent contractors. He asserted that E-Z Movers did not direct or control them because, among other things, they could decline the job for any reason. Hagoel stated that the drivers and helpers were free to work with other moving companies or use their skills at any job they were offered. He also testified that the drivers and helpers were free to set their own schedules within the customers' time frame. The drivers and helpers were also responsible for paying for their own tools, such as gloves and boots. In addition, the workers would pay the cost for any additional expenses necessary to complete the move at the final destination if they were unable to park the truck close enough. The additional expense would be charged to the customer for the service and that income would be distributed to the drivers and helpers.

¶ 9    Hagoel explained that E-Z Movers entered into written contracts with the customers who were being charged hourly. The drivers and helpers obtained a percentage of that amount based on various factors. The workers were paid every two weeks, but if they did not have any work during the previous weeks, they would not get paid.

¶ 10    Following the administrative hearing, E-Z Movers submitted a copy of its independent contractor affirmation ("contract") and its independent contractor's long distance contract as requested by the Director's representative. The contract stated that the individual worked for himself and that he was responsible for "procuring all applicable insurance," including his own workers' compensation insurance.

¶ 11    The long distance agreement provided that the "contractor" agrees to "maintain, deliver, and move all jobs assigned by E-Z Movers, Inc. in its long distance moving and relocation service." Contactor would determine the "method, details, and means of performing the *** services in a professional and prudent manner." The agreement stated that E-Z Movers would provide the moving truck but that the worker had to obtain any other tools necessary to complete the assignments and that the contractor would not be allowed to use the truck for any other moving or relocation company without the explicit consent of E-Z Movers.

¶ 12    On November 15, 2011, the Director's representative issued his recommended decision. He noted that E-Z Movers failed to satisfy all the requirements listed in section 212 of the Act and that the drivers and helpers were employees and not independent contractors. E-Z Movers filed their objections to the decision of the Director's representative.

¶ 13    On July 18, 2012, the Director issued his final administrative decision upholding the Department's finding. E-Z Movers filed its complaint for administrative review in the circuit

court. At the hearing, E-Z Movers argued that the Department failed to fully consider all the enumerated factors in the Act in arriving at its decision. The circuit court reversed the Director's decision. This appeal followed.

¶ 14                                                    ANALYSIS

¶ 15    This court reviews the decision of the agency, rather than that of the circuit court. *Sudzus v. Department of Employment Security*, 393 Ill. App. 3d 814, 819 (2009). Judicial review of an agency's decision extends to all questions of law and fact presented by the record. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008). The standard applied on review of an agency's decision depends upon whether the issue presented is one of fact or of law. *Carpetland U.S.A., Inc. v. Illinois Department of Employment Security*, 201 Ill. 2d 351, 369 (2002). When reviewing purely factual findings, the agency's findings and conclusions are deemed to be *prima facie* true and correct and, thus, are reviewed under a manifest weight of the evidence standard. *Id.*

¶ 16    Our review here is under the clearly erroneous standard, as our supreme court has previously determined that "whether certain workers are independent contractors under section 212 of the Act is such a mixed question of law and fact, subject to review for clear error." *Id* (citing *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 396 (2001)). An agency decision is clearly erroneous where the entire record leaves the reviewing court with the definite and firm conviction that a mistake has been made. *Hurst v. Department of Employment Security*, 393 Ill. App. 3d 323, 327 (2009).

¶ 17    On appeal, the Department contends the Director's determination that the workers in question were "employees" rather than "independent contractors" under section 212 of the Act was not an error. The Department argues that E-Z Movers failed to show that (1) the drivers and helpers were free from its control and direction, (2) the drivers and helpers were not outside the employer's usual course of business, and (3) the drivers and helpers were engaged in an independently established business. Accordingly, the Department maintains that E-Z Movers was responsible for making unemployment insurance contributions on their behalf.

¶ 18    The Act provides economic relief to involuntarily unemployed individuals through the collection of compulsory contributions from employers and the payment of benefits to eligible unemployed persons. 820 ILCS 405/100 (West 2006). Liability for contributions and eligibility for benefits is dependent, in part, on the existence of an "employment relationship." *AFM Messenger Service*, 198 Ill. 2d at 396; *Carpetland U.S.A.*, 201 Ill. 2d at 354 ("Under the Act, an employer's liability for making contributions and an employee's eligibility for benefits is dependent, in part, on the existence of an employment relationship between them."). To determine whether an employment relationship exists, we must consider statutory definitions, which are more inclusive than the common-law principles of master and servant and independent contractor. *AFM Messenger Service*, 198 Ill. 2d at 396.

¶ 19    Section 212 of the Act provides an exemption from employment for services performed by independent contractors where three conditions are met. Section 212 provides:

> "Service performed by an individual for an employing unit, whether or not such individual employs others in connection with the performance of such services, shall be deemed to be employment unless and until it is proven in any proceeding where such issue is involved that—

A. Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

B. Such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

C. Such individual is engaged in an independently established trade, occupation, profession, or business." 820 ILCS 405/212 (West 2006).

¶ 20    The Act sets forth the three section 212 conditions in the conjunctive, and therefore, all three conditions must be satisfied for the independent-contractor exemption to apply. *AFM Messenger Service*, 198 Ill. 2d at 398 ("[b]ecause the inability to satisfy any one [section 212] condition will defeat an employer's claim for an independent-contractor exemption," the court found it only necessary to consider one section 212 condition); *Chicago Messenger Service v. Jordan*, 356 Ill. App. 3d 101, 105 (2005).

¶ 21                            I. Section 212(A) of the Act

¶ 22    The Department argues that the Director did not clearly err in determining that E-Z Movers failed to satisfy section 212(A) of the Act. Under the Act, an independent contractor must be "free from control or direction over the performance" of the services he provides. 820 ILCS 405/212(A) (West 2006). " 'Direction or control' within the meaning of Section 212(A) of the Act means that an employing unit has the right to control and direct the worker, not only as to the work to be done but also how it should be done, whether or not that control is exercised." 56 Ill. Adm. Code 2732.200(g), amended at 25 Ill. Reg. 2003 (eff. Jan. 18, 2001).

¶ 23    The Illinois Administrative Code contains a list of 25 factors that the Department examines to determine whether direction or control exists. *Carpetland U.S.A.*, 201 Ill. 2d at 374. Some of the 25 factors to be considered are these: "does the employing unit issue assignments or schedule work, set quotas or time requirements"; "does the employing unit have the right to change the methods used by the worker in performing his or her services"; "does the employing unit require the worker to follow a routine or schedule"; "does the employing unit require the worker to report to a specific location and/or at regular intervals"; "does the employing unit require the worker to furnish a record of his or her time to the firm"; "does the employing unit require the worker to perform services a specific number of hours per day or per week"; "does the employing unit engage the worker on a permanent basis"; "does the employing unit reimburse the worker for expenses incurred"; "is the worker eligible for a pension, a bonus, paid vacation or sick pay"; "does the employing unit carry workers' compensation insurance on the worker"; "does the employing unit furnish the worker with materials and supplies, tools or equipment"; "does the employing unit furnish the worker with transportation, samples, a drawing account, business cards, an expense account, or order blanks"; "does the employing unit allow the worker to sell noncompetitive lines or engage in other employment"; "does the employing unit restrict the worker in terms and conditions of sale and choice of customers"; "does the employing unit assign or limit the territory in which the individual performs"; "does the employing unit set the price and credit terms for the products or service"; "does the employing unit reserve the right to approve

orders or contracts"; and "does the employing unit have a right to discharge." 56 Ill. Adm. Code 2732.200(g)(1)-(25), amended at 25 Ill. Reg. 2003 (eff. Jan. 18, 2001).

¶ 24    E-Z Movers argues that the Director's determination was clearly erroneous when he failed to explain each factor that was not satisfied even though the Director referenced the 25 factors in its decision. Specifically, E-Z Movers attempts to analyze every single factor mainly arguing that the drivers and helpers were free from the direction and control of E-Z Movers when the workers set their own schedule, can turn out jobs, do not punch a clock, determine the method details and means of performing their services, and supply several tools and instrumentalities to perform their services. In addition, E-Z Movers contends that the Director gave inadequate consideration and weight to some of the factors that he analyzed.

¶ 25    We note that E-Z Movers' contention is not that the Director had made a mistake to any of the facts but that the Director's determination was erroneous due to the weight that he gave to the factors and the evidence in the case. But on administrative review, a reviewing court does not reweigh the evidence that was before the agency. *Livingston v. Department of Employment Security*, 375 Ill. App. 3d 710, 715 (2007). Instead, after reviewing the evidence presented, the court asks whether the agency's decision was clearly erroneous. *Id*. The 25 factors will be considered in light of the "type of business subject to review and the relationship being examined." 56 Ill. Adm. Code 2732.200(g), amended at 25 Ill. Reg. 2003 (eff. Jan. 18, 2001). Thus, not all factors will be relevant in every case. *Carpetland U.S.A.*, 201 Ill. 2d at 374-75. In addition, the result will be determined by "the business reality or totality of circumstances," not by the answer to any particular question or group of questions. 56 Ill. Adm. Code 2732.200(g), amended at 25 Ill. Reg. 2003 (eff. Jan. 18, 2001).

¶ 26    Here, the Director's determination that E-Z Movers exercised direction and control over the workers was not clearly erroneous. The record indicates that, after referencing the regulation and all the 25 factors, the Director focused in his written opinion on the questions and contentions that he deemed most relevant in the case. The Director noted that E-Z Movers had the right to hire and fire the workers; E-Z Movers provided the workers with the moving truck, which was the most important tool needed for the job; the drivers and the helpers could not assign their obligations to other persons without E-Z Movers' approval; and E-Z Movers scheduled the jobs with customers and limited the workers' use of the trucks without its permission.

¶ 27    Although E-Z Movers' witnesses testified that the drivers and helpers could reject assignments for any reason, the Director found this claim to be contradicted by the language of the independent contractor agreement which specified that "contractor agrees to: maintain, deliver and move *all jobs* assigned by E-Z Movers in its log [*sic*] moving and relocation service." (Emphasis added.) The Director then resolved the conflicting evidence finding that the helpers and drivers could not actually decline any type of jobs.

¶ 28    Next, the Director noted other evidence that indicated that E-Z Movers exercised control and direction over its drivers and helpers: the independent contract agreement required that the services be "professional and prudent" and, also, the workers could be dismissed for not following a route approved by the Department of Transportation. The Director also pointed out that while the workers were required to purchase some tools and instrumentalities to perform the services, the most important piece of equipment, the moving truck, was provided

by E-Z Movers. The Director evaluated the entire evidence and concluded that E-Z Movers failed to establish that section 212(A) exempts the drivers and helpers.

¶ 29 Based on the entire record, even though the Director did not specify each factor in its decision, it did not clearly err in determining that E-Z Movers exercised control and direction over its drivers and helpers. Moreover, nothing obligates the Director to make a written finding as to each factor, and his findings need be only specific enough to permit an intelligent review of his decision. See *Morgan v. Department of Financial & Professional Regulation*, 388 Ill. App. 3d 633, 655 (2009). Therefore, we find that, based on the totality of the circumstances, the Director's decision that E-Z Movers failed to establish that section 212(A) exempts the drivers and helpers was not clearly erroneous. *Carpetland U.S.A.*, 201 Ill. 2d at 375.

¶ 30 Because the inability to satisfy any one condition of the three listed in section 212 will defeat an employer's claim for an independent-contractor exemption, we could stop our analysis here and uphold the Director's decision. *AFM Messenger Service*, 198 Ill. 2d at 398. Nonetheless we will analyze the other two provisions.

¶ 31 II. Section 212(B) of the Act

¶ 32 In order to establish independent-contractor status under section 212(B) of the Act, the services performed must be either "outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed." 820 ILCS 405/212(B) (West 2006). The Director found that the drivers' and helpers' services were not outside E-Z Movers' usual course of business. "To determine whether services fell outside McMahon's usual course of business, 'the key to this inquiry is whether the services are necessary to the business of the employing unit or merely incidental.' " *L.A. McMahon Building Maintenance, Inc. v. Department of Employment Security*, 2015 IL App (1st) 133227, ¶ 45 (quoting *Carpetland U.S.A.*, 201 Ill. 2d at 386).

¶ 33 E-Z Movers argues that the Director erred in its determination that the drivers' and helpers' services were not outside E-Z Movers' usual course of business because the workers merely performed the physical side of the moving business, while E-Z Movers is in the marketing end of the industry.

¶ 34 We disagree. We find no clear error in the Director's determination that the drivers' and helpers' services were not outside E-Z Movers' usual course of business, where a moving company would not exist without its workers to physically haul the items. See *L.A. McMahon Building Maintenance, Inc.*, 2015 IL App (1st) 133227, ¶ 45 ("[W]e find no clear error in the Director's determination that the window washers' services in washing windows for McMahon Window Washing were not outside McMahon's usual course of business, where McMahon's window washing business would not exist without window washers to wash windows.").

¶ 35 The Director properly observed that E-Z Movers holds itself out to the public and it is a "Chicago Moving Company" providing moving services. E-Z Movers' primary business activity is listed as "MOVING + STORAGE." Furthermore, the Director correctly determined that the drivers and helpers represented E-Z Movers interests "when they wear their E-Z Movers uniforms to moving jobs" and "use the trucks owned by [E-Z Movers] that

bear the logo E-Z Movers." Accordingly, the Director did not err in its determination that the drivers and helpers were not outside the usual course of business for a moving company.

¶ 36    We note that E-Z Movers forfeited the argument that the workers' services was performed outside of all places of business of the enterprise as it failed to raise it at the administrative hearing, in the circuit court, and on appeal. See *Carpetland U.S.A.*, 201 Ill. 2d at 397. Therefore, the Director's conclusion that E-Z Movers failed to establish that section 212(B) exempts the drivers and helpers was not clearly erroneous.

¶ 37                          Section 212(C) of the Act

¶ 38    Section 212(C) of the Act addresses whether the workers are engaged in independently established trades, occupations, or business. To meet this part of the test, the entrepreneurial enterprise must enjoy a " 'degree of economic independence such that the enterprise could survive any relationship with the particular person contracting for services.' " *AFM Messenger Service*, 198 Ill. 2d at 401 (quoting *Jack Bradley, Inc. v. Department of Employment Security*, 146 Ill. 2d 61, 78 (1991)). The Illinois Administrative Code suggests 13 factors, no one of which is dispositive, for consideration. *SMRJ, Inc. v. Russell*, 378 Ill. App. 3d 563, 574 (2007). The inquiry focuses on "the business reality or totality of circumstances." 56 Ill. Adm. Code 2732.200(e), amended at 25 Ill. Reg. 2003 (eff. Jan. 18, 2001). Where workers were not capable of providing their services without dependence upon another entity, they will not be considered to have met the statutory requirement set forth in section 212(C). *SMRJ, Inc.*, 378 Ill. App. 3d at 574.

¶ 39    Here, the Director did not err in concluding that E-Z Movers failed to show that its drivers and helpers could operate without its involvement. E-Z Movers owned all the trucks used by its drivers and helpers during the moves. E-Z Movers provided no evidence that any of the drivers and helpers owned their own trucks or could operate without one. Similarly, the Director properly noted that E-Z Movers had been granted the license to haul goods, and no evidence suggested that any individual drivers and helpers had been granted licenses or that they could operate without licenses.

¶ 40    The Director acknowledged that the drivers and helpers purchased their own tools such as gloves and boots. However, these factors do not establish that the drivers and helpers were engaged in a moving business. To the contrary, E-Z Movers failed to present any additional evidence showing that the drivers and helpers have "a property interest in the business" that they can operate without hindrance from E-Z Movers. In *AFM Messenger Service*, 198 Ill. 2d at 402, our supreme court held that, under section 212(C) of the Act, the drivers' delivery businesses were not established "independently" of the messenger service company when the company procured the customers, set delivery prices, provided the delivery tickets to the customers, billed the customers, set the commission rate, and paid the drivers. Similarly, here, as noted by the Director, E-Z Movers procured all the customers, set the prices, determined the drivers' and helpers' commissions, provided the assignments, billed the customers, set the commissions, and paid the drivers and helpers. Just as in *AFM Messenger Service*, the drivers' and the helpers' business was not established independently of E-Z Movers.

¶ 41    E-Z Movers contends that the Director erred in its determination when it failed to properly evaluate and consider some of the factors listed in section 212(C). For instance, E-Z Movers argues that that the workers had the right to work for others and that such a factor

- 8 -

indicates that the workers are established independently of E-Z Movers. But, the fact that an individual may also perform services for other companies does not necessarily establish that the individual is an independent contractor under section 212(C). *Jack Bradley, Inc.*, 146 Ill. 2d at 80. The focus of the relevant inquiry is whether the individual workers had businesses or occupations that were capable of operation independent of a relationship with the employing unit. See *Jack Bradley, Inc.*, 146 Ill. 2d at 80; *SMRJ, Inc.*, 378 Ill. App. 3d at 574. Here, E-Z Movers did not present evidence that the drivers and helpers could operate in the absence of it or a company alike that would furnish them a moving truck and that would procure them customers. Accordingly, the Director did not clearly err in concluding that the drivers and helpers did not have an independently established business.

¶ 42 In reaching our conclusion we note again that the question before this court is not whether the evidence could have been construed differently, but whether the Director's conclusion was clearly erroneous. Based on the entire record, we find that the Director's determination that the drivers and helpers were employees was not clearly erroneous. Therefore, the circuit court erred in reversing the Director's decision.

¶ 43                                      CONCLUSION

¶ 44 Based on the foregoing, we reverse the judgment of the circuit court. The Director's decision is affirmed.

¶ 45          Circuit court judgment reversed.

¶ 46          Director's decision reinstated.