First Division

May 31, 2005

No. 1-04-1826

TAMARA MOSS,

Plaintiff-Appellant,

v. 

THE DEPARTMENT OF EMPLOYMENT SECURITY; DIRECTOR OF THE DEPARTMENT OF EMPLOYMENT SECURITY; BOARD OF REVIEW; TITAN SECURITY SERVICE; and LYLE HEADLEY, HUMAN RESOURCES DIRECTOR,

Defendants-Appellees.

)

)

)

)

)

)

)

)

))

)))

)

Appeal from 

the Circuit Court 

of Cook County

03 L 51544 

Honorable 

Sheldon Gardner

Judge Presiding

JUSTICE McBRIDE delivered the opinion of the court:

In May 2003, plaintiff, Tamara Moss, applied for unemployment insurance benefits from defendant Illinois Department of Employment Security (Department), pursuant to the Unemployment Insurance Act (Act) (820 ILCS 405/100 
et
 
seq
. (West 2002)).   The Department found that plaintiff’s “principal occupation” was that of a student, and therefore, plaintiff was ineligible for unemployment insurance benefits under section 500(C)(4) of the Act.  820 ILCS 405/500(C)(4) (West 2002).  On administrative review, the circuit court affirmed the Department’s decision to deny plaintiff’s claim.

Plaintiff appeals, arguing that (1) a claimant’s overall availability to work should be considered before being denied benefits on the ground that her “principal occupation” is that of a student, and (2) part-time workers are eligible for benefits under section 500(C) of the Act.

From September 2001 to March 2003, plaintiff worked full-time as a security officer with defendant Titan Security Services (Titan).  Between March and May 2003, plaintiff received sporadic assignments on an “on call, as needed” basis.  On May 4, 2003, plaintiff applied for unemployment benefits.

In May 2003, a claims adjudicator with the Department interviewed plaintiff.  Plaintiff stated that she was attending classes to become a medical assistant at Olympia College from 7 a.m. until noon Wednesday to Saturday.  Her program began April 30, 2003, and would end on December 17, 2003.  Plaintiff obtained student loans to pay for the program.  Plaintiff stated that she would not be seeking full-time employment until the completion of her program.  Plaintiff’s claim for unemployment benefits was denied on May 29, 2003, because the adjudicator found that plaintiff’s “principal occupation” was that of a student and she failed to meet the eligibility requirements under the Act.

Plaintiff appealed this decision.  In July 2003, plaintiff testified at a telephone hearing before a referee.  Plaintiff stated that her last employer was Titan.  While working for Titan, plaintiff began working “different sites” and was no longer working 40 hours a week.  Plaintiff was told that she could file for unemployment because she was not working a full-time.  Plaintiff received a letter in the mail terminating her employment a couple weeks after she filed for unemployment.  Plaintiff confirmed that as of May 4, 2003, she was still employed with Titan when she filed for unemployment, but did not work any hours that week.

Plaintiff said that she was currently taking classes.  She chose the morning classes so she would be available for an afternoon or evening shift with Titan.  Plaintiff stated that she is “looking for whatever [work] [she] can get.”  She indicated that she was willing to work full-time if offered as well as part-time if necessary.  

Plaintiff asked the referee why she was ineligible for unemployment benefits, and the referee answered that, “It’s because you are a student.  When someone’s principal occupation is student, that is, they look for work around the hours they go to school, they’re not eligible for unemployment.”  Plaintiff responded that she only goes to school for five hours and she still has time to work.  The referee stated that, “Most jobs are Monday to Friday, X number of hours or what have you.  So when you go to school, you try to work your hours around the school, and that makes your principle [
sic
] occupation school.  That’s why you have not received benefits.”  The referee continued and asked plaintiff, “If somebody offered you a full-time job, would you drop school?”  Plaintiff answered that she would not be able to leave school because she would still need to pay back the student loan regardless of if she finishes the program or not.

The referee issued her decision in July 2003 and affirmed the decision of the local office finding plaintiff ineligible because her principal occupation is that of a student.  In her conclusion, the referee held:

“The claimant’s principal occupation is that of a student.  Although she has worked and continues to look for part-time work or work that will fit around her schedule, the realities of her present position are school is primary and work is secondary.  That conclusion is drawn since she will not leave school to take a job.  No matter how harsh the latter may seem, it dictates that her primary interest is that of a student.  The claimant is not being penalized for going to school.  The unemployment statute was established for workers who found themselves unemployed through no fault of their own and who put no restrictions on securing a new job.  Consequently, the claimant is not eligible to receive unemployment benefits under Section 500C4 of the Act.”

In July 2003, plaintiff appealed the referee’s decision to the Board of Review (Board).  In her letter of appeal, plaintiff characterized herself as a “part-time student” and argued that “business is not only conducted around the regular 9-5 hours.”  She noted that a person very seldom gets a 9 a.m. to 5 p.m. shift in the security field.  She said that while she will not leave school, she was willing to change her course schedule to fit her work schedule.  Plaintiff wrote another letter to the Board in August 2003 because she had not received a decision.  

In November 2003, the Board affirmed the referee’s decision.  The Board determined that further evidence was unnecessary and the referee’s decision was supported by the record and the law.  The Board specifically highlighted plaintiff’s statement that she would not “drop” school if offered a full-time job.  The Board found that plaintiff “has voluntarily withdrawn herself from the active labor force.  In addition she places such unreasonable restorations on her search for work as to render obtaining new employment which meets all her conditions, realistically doubtful.”

In December 2003, plaintiff sought administrative review in the circuit court.  In March 2004, plaintiff filed a memorandum of law in support of her complaint.  In May 2004, the court entered an order affirming the decision of the Board.

This appeal followed.

The primary issue before this court is whether plaintiff’s principal occupation is that of a student pursuant to section 500(C)(4) of the Act.  Plaintiff argues that the Department has created a 
per se
 rule to exclude a claimant from unemployment benefits if that claimant refuses to quit school to take a job.  Plaintiff asserts that this issue should be reviewed 
de novo
 because it is question of statutory construction.  Defendants disagree and argue the standard of review is clearly erroneous because this issue presents a mixed question of fact and law since the determination of whether plaintiff’s principal occupation is that of a student involves a factual as well as legal determination.  

We agree with defendants.  A mixed question of law and fact is one involving an examination of the legal effect of a given set of facts.  
AFM Messenger Service, Inc. v. Department of Employment Security
, 198 Ill. 2d 380, 391 (2001).  Stated another way, a mixed question is one in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or whether the rule of law as applied to the established facts is or is not violated.  
AFM Messenger
, 198 Ill. 2d at 391.  Here, the question of whether plaintiff’s principal occupation is that of a student under the Act presents a mixed question of law and fact.  A mixed question of law and fact is reviewed under the clearly erroneous standard.  
Knorst v. State Universities Civil Service System
, 325 Ill. App. 3d 858, 861 (2001).

The clearly erroneous standard of review lies between the manifest weight of the evidence standard and the 
de novo
 standard, and as such, it grants some deference to the agency’s decision.  
AFM Messenger
, 198 Ill. 2d at 392.  “When the decision of an administrative agency presents a mixed question of law and fact, the agency decision will be deemed ‘clearly erroneous’ only where the reviewing court, on the entire record, is ‘left with the definite and firm conviction that a mistake has been committed.’ ”  
AFM Messenger
, 198 Ill. 2d at 395, quoting 
United States v. United States Gypsum Co.
, 333 U.S. 364, 395, 92 L. Ed. 746, 766, 68 S. Ct. 525, 542 (1948).  Nonetheless, that the clearly erroneous standard is largely deferential does not mean, however, that a reviewing court must blindly defer to the agency’s decision.  
AFM Messenger
, 198 Ill. 2d at 395.

The primary purpose of the Act is to provide compensation benefits to unemployed individuals to alleviate their economic distress caused by involuntary unemployment, not to benefit those who are unemployed because of their own misdeeds.  
Miller v. Department of Employment Security
, 245 Ill. App. 3d 520, 522 (1993).  Receiving unemployment insurance benefits in this state is a conditional right, and the claimant bears the burden of proving his eligibility for those benefits.  
Miller
, 245 Ill. App. 3d at 522.

Section 500 of the Act outlines the eligibility for benefits.  An unemployed individual is eligible for benefits if he: (1)  has registered for work and has continued to report to an unemployment office; (2) has made a claim for benefits with respect to each week; and (3) is able and available for work, and was actively seeking work for the period in question.  820 ILCS 405/500 (West 2002).  “Available for work” means that the claimant stands ready and willing to accept suitable work.  
Miller
, 245 Ill. App. 3d at 522.  However, section 500(C)(4) provides that “[a]n individual shall be deemed unavailable for work with respect to any week which occurs in a period when his principal occupation is that of a student in attendance at, or on vacation from, a public or private school.”  820 ILCS 405/500(C)(4) (West 2002).

Here, the Board interpreted plaintiff’s statement that she would not quit school if offered a full-time job to mean that plaintiff was not looking for full-time work.  In its decision, the Board relied on this statement to find that plaintiff’s principal occupation was that of a student, and therefore, plaintiff was ineligible for unemployment benefits.   We disagree with the Board’s characterization of plaintiff’s response to the question posed by the referee.  When asked, “If somebody offered you a full-time job, would you drop school?”, plaintiff said she would not leave school, but she did not say that she would turn down the job.  Plaintiff did not state that she was not available and not willing to work a full-time job.  In fact, plaintiff told the referee that she was “looking for whatever I can get.  If they can get me full-time, I’ll work full-time.  If they can get me part-time, I’ll work part time because I need money.”

Moreover, we conclude that asking a claimant whether she would leave school for a full-time job is not the correct focus under section 500(C)(4).  The plain language of the statute does not render 
all
 students ineligible, just those whose principal occupation is that of a student.  Whether a claimant is willing to end her education for a full-time job is not relevant to the issue of eligibility for unemployment benefits because a claimant can be available for work and remain a student.  The statute does not set forth any such requirement in order to avoid being classified with a principal occupation of a student.  Nor do any Illinois decisions suggest such a requirement.  

Instead, the correct focus in determining if a claimant’s principal occupation is that of a student is whether the claimant has placed restrictions on her job search because of her status as a student.  The analysis should focus on whether work is subordinate to and geared around an educational program as well as the claimant’s availability to work a full-time job with her school commitments.  See 
Miller
, 245 Ill. App. 3d at 523; 
James v. Department of Labor
, 119 Ill. App. 3d 524, 528 (1983). 

In 
Miller
 and 
James
, the reviewing courts found that the plaintiffs had made work subservient to school and were only seeking part-time work that did not interfere with their courses.  
Miller
, 245 Ill. App. 3d at 523-24; 
James
, 119 Ill. App. 3d at 528.  In 
Miller
, the plaintiff took classes at varying times Monday through Friday at Lincoln Land Community College and wanted to work an afternoon or evening shift.  
Miller
, 245 Ill. App. 3d at 522-23.  The plaintiff indicated on a form that he did not want to work a ‘ graveyard shift, ’ but later showed a possible willingness to work the late hours if “the pay was right.”  
Miller
, 245 Ill. App. 3d at 523.  In his forms, the plaintiff also stated that he could not work Mondays, Tuesdays, Wednesdays or Thursdays because of school.  
Miller
, 245 Ill. App. 3d at 523.  Based on this evidence, the 
Miller
 court concluded that “the Department could appropriately find plaintiff’s employment was geared around and subservient to his classes.”  
Miller
, 245 Ill. App. 3d at 523.

In 
James
, the plaintiff was enrolled in a doctoral program which required three hours of classes on two evenings a week, clinical training from 9 a.m. to 4 p.m. on Mondays and Wednesdays, six to eight hours a week of studying, and extended studying on Saturday and Sunday at the end of semesters.  
James
, 119 Ill. App. 3d at 527.  The plaintiff had worked approximately 16 to 20 hours each week at her former employer.  
James
, 119 Ill. App. 3d at 526.  The Second District held that the evidence demonstrated that the plaintiff was employed on a part-time basis while enrolled in “an almost full-time educational program.”  
James
, 119 Ill. App. 3d at 528.  The 
James
 court went on to find that the time requirements of the plaintiff’s studies were greater than those of her employment.  
James
, 119 Ill. App. 3d at 528.   

In the present case, the Board and the referee did not properly consider the circumstances of plaintiff’s case.  Plaintiff had worked for Titan for a year and a half, but when her hours were reduced, she decided to enroll in a medical assistant program to change careers.  Plaintiff was not a student who worked, but was a worker who opted to become a student to find a better job.  Plaintiff stated that she chose the morning classes because she worked in the afternoons for Titan.  Plaintiff wanted to remain available for work.  Plaintiff scheduled school around work, not the other way around, and she indicated that she would be willing to change her school schedule to accommodate a full-time job.  Additionally, we note that unlike in 
Miller
 and 
James
, the record does not indicate whether plaintiff was considered a full-time student at Olympia College.  The referee also did not inquire about time spent studying outside of the classroom.  We will not speculate whether plaintiff’s medical assistant program required study time apart from her time in class.

Also, at the hearing, the referee told plaintiff that “[m]ost jobs are Monday to Friday, X number of hours,” and did not discuss plaintiff’s prior employment and the hours she worked.  In the record, plaintiff stated that 9 a.m. to 5 p.m. work is not often available in the security field.  We disagree with the referee’s focus on a Monday through Friday, 9 to 5 workweek.  Plaintiff’s work history at Titan did not support this conclusion.  The reality of today’s world does not support a belief that full-time jobs are only available Monday to Friday, 9 to 5.  In some career fields, such as plaintiff’s security officer position, jobs are primarily available for the second shift from 3 to 11 or the third shift from 11 to 7.  A claimant who is going to school can be available for a full-time job at the same time, but the circumstances of each case must be considered by the Department before finding that someone’s principal occupation is that of a student.

Our decision, however, is not meant to open the door for all students to seek unemployment benefits when they find themselves out of work.  “It should not be assumed that this decision will set a precedent for large numbers of college students to finance their college education by way of unemployment compensation benefits.  The factual situations in this case *** are clear, and they permit the courts to draw a line between claimants who are basically students and claimants who are basically committed to the work-force but in addition are attempting to better themselves by continuing their education.”  
Patronas v. Unemployment Compensation Board of Review
,  291 A.2d 118, 120 (Pa. Cmmw. 1972).

Based on the record in this case, we find that the Board’s decision was clearly erroneous because it failed to consider whether plaintiff’s work was subordinate to school so as to render her unavailable to work full-time.  We do not need to reach plaintiff’s remaining issue regarding the eligibility of part-time workers under the statute.  We remand for a full hearing on plaintiff’s application for further proceedings consistent with this decision.

Reversed and remanded.

CAHILL, P.J. and GORDON, J., concur.