NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 7, 2013
Decided October 16, 2013
Amended October 17, 2013

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 13-1180

| | |
|---|---|
| NANCY A. LOTT, <br> *Plaintiff-Appellant,* <br><br> *v.* <br><br> CAROLYN W. COLVIN, <br> Acting Commissioner of Social Security, <br> *Defendant-Appellee.* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. <br><br> No. 11 C 5632 <br><br> Young B. Kim, <br> *Magistrate Judge.* |

**O R D E R**

Nancy Lott challenges the district court's decision upholding the Social Security Administration's denial of her application for disability benefits. Lott argues that the administrative law judge wrongly discredited her testimony and erred in concluding that her medical records showed that she could continue working as a secretary despite

a long list of maladies. The magistrate judge thoroughly analyzed these arguments and determined that substantial evidence supports the ALJ's decision. We affirm.

At the age of 53, Lott applied for disability insurance benefits, alleging that her vision and hearing problems, carpal tunnel, type-I diabetes, kidney disease, and related side effects left her unable to work. She had worked for 22 years as a secretary until being laid off in 2008, her alleged onset date. At issue in this appeal are her hearing and vision problems, carpal tunnel syndrome, and mental health issues. (Her remaining infirmities are thoroughly discussed in the magistrate judge's decision. *Lott v. Astrue*, No. 11 C 5632, 2012 WL 5995736, at *1–3 (N.D. Ill. Nov. 30, 2012).)

Lott attributes many of her medical issues to a 1996 car accident. She underwent surgery to repair the bones around her eyes and jaw after the accident, and had her left retina surgically reattached two years later. Her ophthalmologist stated that Lott's vision—20/30 in her right eye and 20/100 in her left while wearing glasses—was stable since her 1998 eye surgery and opined that Lott had limited hand-eye coordination but could read fine print and drive safely. Her ear issues were more recent: she had small tubes inserted into her eardrums in 2004 and 2007 to relieve pressure. A hearing test preceding the 2007 procedure showed hearing loss in both ears. Lott suffers numbness and tingling in her fingers caused by carpal tunnel syndrome, and her doctors have attempted to alleviate her pain with splints, cortisone injections, and acupuncture. A consultative physical examination by a state doctor in 2009 showed that she had normal grip strength and full range of motion in her hands.

In terms of her mental health issues, Lott alleged that her depression and anxiety prevented her from concentrating on tasks. A psychologist diagnosed her in 2009 with an anxiety disorder and depression and described her concentration and memory as poor. After reviewing the record, another psychologist opined that Lott was limited to "simple routine tasks" because of her concentration problems and poor memory.

At the hearing before the ALJ, Lott discussed how her symptoms affected her daily activities. She explained that she could prepare basic meals, do laundry, take out the garbage, and drive on clear days, but she added that she needed help from her daughter for shopping, cleaning, and driving on cloudy days. She testified that she had "a big mass" floating in her eyes that occasionally blocked her vision and made it hard to read or use a computer for more than half an hour. She also described frequent headaches and said that she had difficulty focusing. Lott wanted surgery to relieve her

carpal tunnel, but could not afford the deductible; she added that she could crochet only for 15-minute intervals and could not manipulate small objects. She added that she worked four afternoons per week as a companion for a visually-impaired woman, a job that mostly involved sitting, talking, and walking short distances. A vocational expert testified that a person with Lott's background, able to use her hands for one-third to two-thirds of the workday, able to stand or walk two hours per day, and having no mental impairments, could work as a secretary.

The ALJ concluded that Lott was not disabled within the meaning of the Social Security Act. Following the required five-step analysis, *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), the ALJ determined that Lott had not engaged in substantial work since her alleged onset date (step one); her carpal tunnel was a severe impairment (step two); it did not meet or equal a listed impairment (step three); she had the residual functional capacity (RFC) to perform light work (step four); and, based on the vocational expert's testimony, she could perform her past work as a secretary (step five). At step five, the ALJ concluded that Lott's symptoms, as recounted in her testimony, were "not credible to the extent they are inconsistent with" the RFC analysis. In the ALJ's view, Lott's testimony conflicted with reports from her ophthalmologist, the results of her 2009 physical examination, and her own account of her daily activities. The ALJ also noted that Lott's receipt of unemployment benefits was conditioned on her certifying that she was willing and able to work, leading the ALJ to believe that Lott sought disability because she could not find a job, not because she was unable to work.

After the Appeals Council denied review, the magistrate judge, presiding by consent, concluded that substantial evidence supports the ALJ's decision. The magistrate judge agreed with the ALJ that Lott could continue working as her medical records confirmed that her symptoms had not worsened since she last worked as a secretary. And although the ALJ used often-criticized boilerplate language in her credibility analysis (stating that Lott's symptoms "are not credible to the extent they are inconsistent with" her RFC), the magistrate judge upheld the adverse credibility finding as not patently wrong. The magistrate judge explained that the ALJ adequately justified her finding by pointing to inconsistencies in Lott's testimony—notably that her alleged limitations conflicted with her ability to work at her part-time companion job.

On appeal, Lott primarily argues that the ALJ, in analyzing her RFC, overlooked her hearing loss, vision problems, carpal tunnel, and depression and failed to consider their aggregate effect. Lott contends that the ALJ glossed over her testimony of severe

limitations in her daily activities—limitations that, she asserts, show why she can no longer work as a secretary.

But with respect to Lott's carpal tunnel and vision problems, the ALJ properly relied on the medical record to conclude that Lott's physical limitations do not prevent her from working. An ALJ may credit doctors' statements over a claimant's testimony, *see Jones v. Astrue*, 623 F.3d 1155, 1161–62 (7th Cir. 2010). Here the ALJ reasonably rejected Lott's testimony in light of her ophthalmologist's conclusion that she could read fine print and drive safely. She also considered a state physician's determination that Lott had normal grip strength and range of motion in her hands. In tailoring the RFC analysis, ALJs may rely on a claimant's daily activities, *see Castile v. Astrue*, 617 F.3d 923, 927–28 (7th Cir. 2010); *Skinner v. Astrue*, 478 F.3d 836, 844–45 (7th Cir. 2007). The ALJ reasonably concluded that Lott could use her hands frequently (one-third to two-thirds of the workday) as reflected by her ability to complete household chores, crochet for 15-minute intervals, and organize items while working part-time as a companion.

Regarding her ear problems, Lott argues that the ALJ "played doctor" in concluding that she could work as a secretary based on her ability to communicate at the hearing; she asserts that the ALJ relied on irrelevant factors and did not consider her ear procedures or 2007 hearing test. But ALJs may properly evaluate the severity of an alleged limitation in light of a claimant's daily activities. *See Pepper v. Colvin*, 712 F.3d 351, 362–63 (7th Cir. 2013); *Simila v. Astrue*, 573 F.3d 503, 514–15 (7th Cir. 2009). The ALJ relied on three daily activities for determining that Lott's hearing loss was not disabling: she noted Lott's ability to drive, work a part-time job, and respond to spoken questions without difficulty. The ALJ does not explain why driving matters, but Lott's part-time job—which required the ability to communicate with a visually impaired woman—and her ability to understand and answer questions support the ALJ's reasonable conclusion that Lott's hearing loss was not disabling. It is true that the ALJ in her ruling did not mention Lott's 2004 and 2007 tube-insertion procedures or a 2007 hearing test, but an ALJ need discuss only relevant medical records, *see Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010), and Lott has not explained how the procedures relate to her hearing loss or show that she is no longer able to work.

Lott finally challenges the RFC analysis because the ALJ cited a lack of treatment as one reason to question the severity of her depression and anxiety. Although the ALJ should have asked Lott why she did not seek treatment, *see Shauger v. Astrue*, 675 F.3d

690, 696 (7th Cir. 2012); *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009), she reasonably relied on Lott's daily activities and the requirements of her part-time job to conclude that her mental health issues were not disabling. The only part of the record at odds with the ALJ's finding was a reviewing psychologist's opinion that Lott's depression and anxiety limited her ability to concentrate and confined her to routine tasks. But ALJs need not give weight to the opinions of non-treating physicians if the opinions conflict with other evidence in the record, *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012), *Simila*, 573 F.3d at 514–15. In this case, the ALJ adequately explained how the state psychologist's conclusion that Lott was limited to unskilled work conflicted with Lott's testimony of working part-time, living on her own, and performing daily chores.

With regard to the aggregate effects of her symptoms, Lott argues that the ALJ's limited discussion shows that she failed to consider the ailments in combination. But we require only that the ALJ acknowledge having considered the aggregate effect, as long as the ALJ discusses each symptom. *See Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008); *Skinner*, 478 F.3d at 845. The ALJ's chronicling of Lott's many maladies and extensive medical records shows that she was aware of Lott's alleged impairments and the relevant evidence. Thus the ALJ's statements that she examined the "combination of impairments" at step two, "considered all symptoms" at step four, and concluded that Lott was not disabled "by her alleged impairments" are sufficient to show that the ALJ accounted for the aggregate effect of Lott's symptoms.

Lott next argues that the credibility finding was patently wrong because the ALJ used boilerplate language frequently derided by this court: "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." We have repeatedly criticized this exact boilerplate (because it asks ALJs to determine a claimant's symptoms before addressing credibility, instead of the other way around), *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012); *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010). Nevertheless, we will uphold the credibility finding if the ALJ offers specific reasons to disbelieve the claimant's testimony, *see Pepper*, 712 F.3d at 367–68; *Shideler v. Astrue*, 688 F.3d 306, 311–12 (7th Cir. 2012). The ALJ was not wrong to question Lott's subjective complaints of disability given the number of daily activities she performed, the level of exertion necessary to engage in those activities, and the paucity of medical records confirming a limited ability to work. *See Pepper*, 712 F.3d at 367–68; *Getch*, 539 F.3d at 483; *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008). For instance, the ALJ noted that Lott's testimony about the severity of her eyesight

problems, particularly her statement that she could not drive on cloudy days, contradicted her ophthalmologist's opinion that she could drive safely at any time. The ALJ also pointed out that Lott had testified that she had severe difficulty using her hands, but as part of her companion job was able to paint her client's nails and organize her belongings; this discrepancy reasonably led the ALJ to discredit Lott's testimony.

Finally, Lott contends that her receipt of unemployment benefits does not support an adverse credibility finding because, she says, she applied out of financial necessity. Lott undoubtedly faces strained circumstances, but she had to certify that she was able to work—in other words, that she was not disabled—to receive unemployment benefits. *See* 820 ILCS 405/500; *Moss v. Dep't of Emp't Sec.*, 830 N.E.2d 663, 668 (Ill. App. Ct. 2005). As we have previously explained, ALJs may rely on this ability-to-work certification as "one of many factors adversely impacting [the claimant's] credibility." *Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005).

AFFIRMED.