2022 IL App (1st) 210468

FIRST DISTRICT
SIXTH DIVISION
April 15, 2022

No. 1-21-0468

| | | |
|---|---|---|
| WENDY J. ROGERS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 2020 L 050089 |
| THE DEPARTMENT OF EMPLOYMENT SECURITY, | ) | |
| THE DIRECTOR OF EMPLOYMENT SECURITY, and | ) | |
| THE BOARD OF REVIEW, | ) | Honorable |
| | ) | Daniel P. Duffy, |
| Defendants-Appellants. | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Presiding Justice Pierce and Justice Mikva concurred in the judgment and opinion.

## OPINION

¶ 1    Defendants, Department of Employment Security (Department), Director of Employment

Security (Director), and Board of Review (Board), appeal the circuit court's reversal on

administrative review of the Board's determination that plaintiff was ineligible for unemployment

benefits. On appeal, defendants contend (1) the Board's finding that the physician letter submitted

by plaintiff was inauthentic was not against the manifest weight of the evidence and (2) the Board's

determination that plaintiff was ineligible for unemployment benefits under section 500(c) of the

Unemployment Insurance Act (Act) (820 ILCS 405/500(C) (West 2018)), was not clearly

erroneous. For the following reasons, we reverse the judgment of the circuit court and reinstate the

decision of the Board.

No. 1-21-0468

¶ 2                                    I. JURISDICTION

¶ 3      The circuit court entered its order reversing the Board's decision on April 2, 2021, and

defendants filed their notice of appeal on April 26, 2021. Accordingly, this court has jurisdiction

pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017),

governing appeals from final judgments entered below.

¶ 4                                    II. BACKGROUND

¶ 5      From August 2018 to July 2019, plaintiff worked as a full-time motor vehicle cashier for

the Secretary of State. On May 30, 2019, plaintiff was involved in a car accident that reinjured her

knee. Plaintiff had suffered a meniscus tear of the knee in 2016. On July 26, 2019, plaintiff

tendered a resignation letter to the Secretary of State. The letter stated, in relevant part:

"Since I have been off rehabbing my knee, I have also been under the care of two

other medical professionals, as part of my recovery process. I wasn't aware of the after

effects of the accident, until I started losing focus, sleep and unexplained weight. This by

law, doesn't have to be disclosed to you, but I feel that transparency is best. I also hope this

clears up any inconsistencies there have been in my attendance, since 5/30/19.

While I value my career with the State of Illinois, this is no value to be placed on

my physical or emotional well-being. I have to be whole to live.

I still face some physical and emotional challenges. I do not expect preferential

treatment because of this. Time is needed for me to heal properly, so I can function in

everyday life, as well [as] my career path.

When I began here in August 2018, it was not with the forethought of quitting or that the DMV was a stepping stone to transition elsewhere. But what I have found is that if I don't step aside, it will prohibit the opportunity for someone who is ready to step up."

Plaintiff also sent a copy of the resignation letter to her manager, Kamilah Kimble.

¶ 6 Plaintiff applied for unemployment benefits. As part of her application, she completed a voluntary leave questionnaire. When asked why she left employment, plaintiff answered that she had been in "a bad car accident" and injured her knee. She was being treated for that injury as well as for anxiety and depression. When asked what reason she gave her employer for leaving, she stated:

"My employer didn[']t do or fail to do anything in this situation. I suffer from constant pain in my left knee as well as short-term memory loss. I did return to work after my accident, but struggled with simple tasks associated with my job functions. With the up and down motions, in the cashier cage, my knee continued to bother me. I did not know how to log into my pos [*sic*], remember how to process customers who came to my window for service, so I had to ask others around for help with most of my transactions."

Plaintiff stated that she had a choice to remain employed. When asked whether she took steps before leaving to resolve the situation, plaintiff answered "Yes" and that she took the following steps: "I came back into work and attempted to return to my original duties. I wore my brace and took (currently still taking) medicine to manage my condition. I forwarded all doctor's notes to the HR dept."

¶ 7 The Secretary of State protested plaintiff's claim for unemployment benefits and attached her resignation letter. The Secretary of State also completed a "Voluntary Leaving Questionnaire"

as plaintiff's employer. Therein, the Secretary of State answered that plaintiff had a choice to remain employed. However, when asked whether plaintiff had taken any steps to explain or resolve the situation before leaving, the Secretary of State answered, "No."

¶ 8 On August 28, 2019, the Department sent a "Notice of Interview" letter to plaintiff. The letter stated that they had been informed of a medical procedure performed on plaintiff and requested a doctor's statement and work search record. The letter stated that the procedure raised concerns regarding plaintiff's ability to satisfy the able and available requirement for unemployment benefits. A telephone interview with plaintiff was scheduled for September 11, 2019, so that she could "supply information regarding 500C Able and Available."

¶ 9 A week before the scheduled interview date, plaintiff sent a letter stating that she did not receive the August 28, 2019, letter from the Department. She said that her search record was "limited" because she was "still unable to perform certain work and still under [her] doctor[s] care." She also forwarded a letter from her doctor as requested. The letter from Dr. Kenneth Finkelstein at Women's Healthcare of Illinois stated: "To whom it may concern; [Wendy J. Rogers] was seen in our office on 8/27/2019. Please feel free to contact our office with any further questions regarding this patient."

¶ 10 During the telephone interview, plaintiff indicated that she had a medical procedure on August 28, 2019. The claims adjuster allowed plaintiff an additional 48 hours to submit a doctor's letter attesting to her fitness to work. Plaintiff did not submit another doctor's letter.

¶ 11 The Department mailed its determination letter on September 16, 2019. It stated, in pertinent part:

"The following determination has been made in connection with the claim for unemployment insurance benefits.

Based on all the determinations regarding your claim, you are not eligible for benefits until you meet the eligibility requirements.

Please read each determination carefully.

Issue 020 500 C Able and Available - Able and Available

Deny Effective 8/11-2019—8/24/2019.

Is the claimant able and available for work? The evidence shows the claimant has a medical restriction. Claimant did not submit requested doctor's release to return to work. Since the claimant has failed to demonstrate that she is able to work, she does not meet this requirement and is ineligible for benefits from 8/11/2019 through 8/24/2019 and will be determined ineligible until she meets the eligibility requirements.

Issue 019 601 A-Voluntary Leaving

Deny Effective 8/11/2019-12/31/9999

Did the claimant voluntarily leave employment? The evidence shows the claimant voluntarily left work at SECRETARY OF STATE because she was unable to work but was not deemed physically unable to perform her work by a licensed and practicing physician. Since the employer did not have the ability to control the conditions or acts the claimant left work voluntarily without good cause attributable to the employer, the claimant is ineligible for benefits from 8/11/2019 and will be determined ineligible until she meets the eligibility requirements."

¶ 12    On October 15, 2019, plaintiff requested reconsideration of the Department's determination. Regarding the able and available issue, plaintiff believed the 48 hours given to obtain notes from her doctors "was somewhat unreasonable" and only one of her three doctors would give their opinion on her medical readiness for work. She stated that the other doctors found the request "unethical." Another provider, Midwest Orthopedic Consultants, required that she submit a formal request for the letter. Plaintiff stated that "[b]ecause their diagnoses differed, my ability to return to work was more subjective than not."

¶ 13    Regarding the voluntary leaving issue, plaintiff "was being penalized for not being able to work, due to injury." She stated that she "wasn't eligible for any type of FMLA or short-term disability because [she] hadn't worked there long enough." Plaintiff

> "couldn't have asked for a special schedule, because those terms don't exist for my job title. I did attempt to return to work and struggled when I did so. I was unable to concentrate or focus[ ] well enough to keep up with the facility traffic flow. I was still taking numerous medications to help me sleep and manage my pain. These medications made me feel sluggish, like I was underwater. I couldn't remember and perform simple work functions[ ] that were commonplace to me prior to my accident. Knowing all of the above, and not being equipped with the answers to fix myself, in a specific amount of time, led to my resignation. Honestly, it seems it would've been better to allow myself to be terminated, rather than resign. I hope my honestly doesn't hinder my chances for reconsideration, but it is how I feel."

¶ 14    Attached to plaintiff's request for consideration were letters from two doctors, both dated September 12, 2019. The letter from clinical psychologist Dr. Cheryl Saafir stated that plaintiff

was under her care for clinical depression "since July 1, 2019 through the present." She provided no other information in the letter. The second letter from Ijaz Ahmad (Ahmad letter) was addressed: "TO WHPM [*sic*] IT MAY CONCERN." The letter in its entirety stated: "Wendy Rogers is a patient at our office, she is under our care from 7/26/19 and she has been able to work from 8/11/19. If you have any questions or concerns please feel free to call the number above." The top of the letter provided the address and phone number for "Family Care Partners."

¶ 15    On October 21, 2019, the Department sent plaintiff a "Notice of Reconsideration and Appeal." The notice stated that "Issue 020 500 C Able and Available" was reviewed for possible reconsideration, and that "[o]n 10/18/2019, an appeal [was] filed to the Referee by the reconsideration unit of the agency." A hearing would be scheduled "before a referee who will give you an opportunity to present evidence." On October 22, 2019, a notice of hearing was sent to plaintiff informing her that a telephone hearing with an administrative law judge (ALJ) would be held on November 4, 2019. Included with the notice of hearing was a pamphlet informing plaintiff that the ALJ would accept written evidence, including medical statements. It also stated that once the hearing is closed, "nothing further may be added to the record."

¶ 16    At the hearing, the ALJ asked plaintiff why she left her employment at the Secretary of State. Plaintiff told her of the car accident that reinjured her knee and that she was being treated weekly for that injury. Plaintiff also said she was receiving treatment for weight loss and her inability to sleep. Her primary care doctor referred her to a psychologist because plaintiff "was having anxiety and depression." Plaintiff told the ALJ that during the period in question, she received treatment from her primary care doctor, from an orthopedist for her knee, and from a psychologist.

¶ 17   When asked whether any of these physicians indicated to plaintiff that she was able to work, plaintiff answered that her psychologist did not feel comfortable providing that information and would only state that plaintiff was being seen for treatment. Plaintiff further explained that when she talked "to the first person" who asked for letters from three different providers, plaintiff was given two days and it is a two-week process to ask her orthopedist for anything other than a refill on her medications.

¶ 18   Plaintiff, however, did submit the Ahmad letter to the ALJ for consideration. Regarding the letter, the ALJ asked plaintiff why it was not written on official letterhead. Plaintiff answered that she told the doctor what she needed "and that's what he gave me." The ALJ noted the typographical error and that the formatting of the letter did not "look regular." The ALJ believed the note did not "look genuine." Plaintiff responded that she could ask the doctor for a more formal note at her next office visit. She agreed that the note looked "homemade." Plaintiff acknowledged that she did not "work on getting something turned into the Department" before her initial interview. She did not know what was required of her in terms of documentation, before the September 11, 2019, telephone interview.

¶ 19   During the hearing, plaintiff stated that she would like "the opportunity to get something more professional" from Dr. Ahmad "because I know he has the means to do it." The ALJ responded that plaintiff could do that, but not for this hearing because the record could not be left "open to receive additional information." However, plaintiff could turn additional information into the local office and then she could ask them to issue "a new determination in light of the new information."

¶ 20    In her decision, the ALJ found that plaintiff was notified on August 28, 2019, that a copy of her doctors' statement should be submitted before her September 11, 2019, interview. When plaintiff could not get releases from her doctors at that time, she was given an additional 48 hours to obtain the notes. Because she failed to do so, the referee had determined that plaintiff was ineligible for benefits.

¶ 21    Although plaintiff submitted the Ahmad letter dated September 12, 2019, upon reconsideration, the letter "appears fabricated." However, the ALJ noted that, even if the Ahmad letter were legitimate,

> "the evidence shows the claimant's medical difficulties primarily stemmed from the psychiatric conditions for which she was consulting a psychologist. Without evidence that this medical professional considered the claimant mentally capable of returning to work, the claimant on these facts did not demonstrate that she was able to work during the period under review. For that reason, she is ineligible to receive benefits for that period under Section 500 C of the Illinois Unemployment Insurance Act."

¶ 22    Plaintiff appealed the ALJ's decision to the Board. In her appeal, plaintiff recognized that "a major reasoning behind the decision was the content, grammar and neglectful manner in which one physician particularly, wrote his statement." Plaintiff wanted "the opportunity to present proper, more detailed submissions" from her doctors.

¶ 23    In its decision, the Board noted that plaintiff sought to present additional information, but it did not consider her request because "she failed to set forth a sufficient explanation showing that for reasons not her fault and outside her control she was unable to introduce the evidence at the hearing before the Referee as required by Section 2720.315(b) of the Benefit Rules." The Board

reviewed the record and found that it "adequately sets forth the evidence so that no further evidentiary proceedings are deemed necessary."

¶ 24    From the record, the Board made the following findings: (1) plaintiff left her employment due to a medical condition; (2) during the benefit period plaintiff sought treatment from three physicians due to her medical condition; (3) prior to her initial interview, plaintiff failed to provide any notes from her physicians regarding her ability to work during the benefit period; (4) the letter she submitted when filing her appeal was "not on letterhead of the provider, has a spelling error, appears unformatted and the person signing it does not give their title"; and (5) plaintiff "did not provide documentary evidence from her two other medical providers stating that she was able to work during the benefit period." Like the ALJ, the Board found that the Ahmad letter was not "authentic or genuine." They concluded that plaintiff failed "to present such documentary evidence which would support a finding that she was able to work during the benefit period." The Board affirmed the ALJ's determination.

¶ 25    Plaintiff filed for administrative review in the circuit court. The court reversed the Board, finding two points of error. First, the Board erred in discounting the Ahmad letter based on suspicions alone because witness testimony may only be discounted if it was "impeached, contradicted by positive testimony or by circumstances, or found to be inherently improbable." The Board could not disbelieve plaintiff's testimony "without evidence that clearly established one of the exceptions set forth in the law."

¶ 26    The court also found that the Board erred in refusing to consider plaintiff's request to present additional evidence. The Board's "summary refusal" was error where the "record was replete with the reasons" plaintiff could not obtain the documentation prior to the hearing before

the referee. The court believed that allowing plaintiff to submit additional documentation would have been "the most efficacious way" to address their authenticity concerns.

¶ 27    Defendants appealed the circuit court's determination.[1]

¶ 28                                III. ANALYSIS

¶ 29    Whether plaintiff was eligible for unemployment benefits under the Act presents a mixed question of law and fact. *Moss v. Department of Employment Security*, 357 Ill. App. 3d 980, 984-85 (2005). Mixed questions are reviewed under the "clearly erroneous" standard, which is less deferential to the administrative agency than the manifest weight of the evidence standard. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 392 (2001). The Board's decision is clearly erroneous if, based on the entire record, the reviewing court is " 'left with the definite and firm conviction that a mistake has been committed.' " *Id.* at 393 (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). On administrative review, we consider the Board's decision and not that of the circuit court. *Sudzus v. Department of Employment Security*, 393 Ill. App. 3d 814, 819 (2009).

¶ 30    When reviewing an unemployment benefits claim, we defer to the Board's findings of fact unless they are against the manifest weight of the evidence. *Manning v. Department of Employment Security*, 365 Ill. App. 3d 553, 556 (2006). Furthermore, the Board must determine the credibility of the witnesses and the weight of the evidence and resolve conflicts in the testimony. *Jackson v. Department of Labor*, 168 Ill. App. 3d 494, 499 (1988). It is not the function

---

[1]Plaintiff did not submit a brief on appeal. However, where "the record is simple and the claimed errors are such that the court can easily decide them without the aid of an appellee's brief," a reviewing court can decide the merits of the appeal. *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

of this court to reweigh the evidence or make an independent determination of the facts. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992).

¶ 31 The purpose of the Act is to relieve economic insecurity caused by involuntary unemployment. 820 ILCS 405/100 (West 2018). Receipt of unemployment benefits is conditioned on eligibility under the Act, and plaintiff bears the burden of proving she satisfies those requirements. *Lojek v. Department of Employment Security*, 2013 IL App (1st) 120679, ¶ 34. A person is eligible for benefits if she (1) has registered for work and has continued to report to an unemployment office, (2) has made a claim for benefits with respect to each week, and (3) is able and available for work and was actively seeking work for the period in question. 820 ILCS 405/500 (A)-(C) (West 2018). Being "able and available for work" means that the claimant is ready and willing to accept suitable work. *Moss*, 357 Ill. App. 3d at 985.

¶ 32 Here, the Board found plaintiff ineligible for unemployment benefits because she failed to satisfy section 500 (C)'s requirement that she was "able and available" for work during the period in question. The Act does not define "able to work." Section 2865.105(a) of the Department's regulations, however, states "[a]n individual is able to work when he or she is physically and mentally capable of performing work for which he or she is otherwise qualified." 56 Ill. Adm. Code 2865.105(a) (2020). "The focus is upon the individual's condition, [and] the employer's willingness to hire him or her is not relevant." *Id.* § 2865.105(b).

¶ 33 From the record, the Board made the following findings: (1) plaintiff left her employment due to a medical condition; (2) during the benefit period plaintiff sought treatment from three physicians due to her medical condition; (3) prior to her initial interview plaintiff failed to provide any notes from her physicians regarding her ability to work during the benefit period; 4) the letter

she submitted when filing her appeal was "not on letterhead of the provider, has a spelling error, appears unformatted and the person signing it does not give their title"; and 5) plaintiff "did not provide documentary evidence from her two other medical providers stating that she was able to work during the benefit period."

¶ 34    The Board's findings are not against the manifest weight of the evidence. Plaintiff's resignation letter, her answers to the voluntary leave questionnaire, and her explanations during the hearings showed that she left her employment because she struggled with the physical and emotional aftereffects of her accident. She was under the care of three doctors during the period in question, but only "Ijez Ahmad" provided a letter stating that plaintiff was "able to work from 8/11/19." The Board found that the Ahmad letter was not "authentic or genuine." A reviewing court, however, need not give the same deference to the Board's finding as to the authenticity of a letter, where the Board did not hear testimony from the author and as a result, the demeanor of witnesses played no role in credibility assessments. See *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 506 (2007).

¶ 35    Here, we need not assess the Ahamd letter's authenticity because the Board did not rest its determination solely on that letter. The Board also found that plaintiff failed to provide statements from her other treating physicians. In addition to her knee injury, plaintiff suffered from anxiety and depression which also affected her ability to work. When the ALJ asked her about getting a statement from her psychologist, plaintiff answered that Dr. Saafir did not feel comfortable providing that information. She would only say that plaintiff was under her care for clinical depression. It was not simply a matter of plaintiff having more time to obtain a letter from Dr. Saafir. And as the ALJ noted, much of plaintiff's difficulties with her employment stemmed from

her mental and emotional issues. Without a statement from Dr. Saafir regarding plaintiff's ability to work, she cannot show that she "is physically *and* mentally capable of performing work for which he or she is otherwise qualified." (Emphasis added.) 56 Ill. Adm. Code 2865.105(a) (2020).

¶ 36    The Board also did not err in declining to consider additional evidence from plaintiff. The Board may, in its discretion, accept additional evidence. 820 ILCS 405/803 (West 2018). However, for the Board to consider such evidence plaintiff must include an explanation demonstrating her inability to present the evidence at the hearing before the referee for reasons outside of her control. See 56 Ill. Adm. Code 2720.315(b) (2019). In its notice of pending appeal, the Board informed plaintiff that her request to submit additional evidence "must include *** [a]n explanation showing that the requesting party, for reasons not its fault and outside its control, was unable to introduce the evidence at the hearing before the Referee." The record does not contain such an explanation from plaintiff. Therefore, we find that the Board did not abuse its discretion in refusing to consider additional evidence. See *White v. Department of Employment Security*, 376 Ill. App. 3d 668, 672-73 (2007) (finding that "the Board properly denied plaintiff's request to submit additional evidence of his telephone records because *** plaintiff did not demonstrate he was not at fault for failing to introduce those records at the hearing before the referee").

¶ 37    The Board's decision is clearly erroneous only if, based on the entire record, we are "left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *AFM Messenger*, 198 Ill. 2d at 393. The record supports the Board's determination. "If there is any evidence in the record to support the Board's decision, that decision is not contrary to the manifest weight of the evidence and must be sustained on review." *Woods v. Illinois Department of Employment Security*, 2012 IL App (1st) 101639, ¶ 16. As such, we must affirm

the Board's determination that plaintiff was ineligible for unemployment benefits under section 500(C) of the Act.

¶ 38                                   IV. CONCLUSION

¶ 39     For the foregoing reasons, we reverse the judgment of the circuit court and affirm the Board's determination.

¶ 40     Circuit court judgment reversed; Board decision affirmed.

**No. 1-21-0468**

| | |
|---|---|
| **Cite as:** | *Rogers v. Department of Employment Security*, 2022 IL App (1st) 210468 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2020-L-050089; the Hon. Daniel P. Duffy, Judge, presiding. |
| **Attorneys for Appellant:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Alexandrina Shrove, Assistant Attorney General, of counsel), for appellants. |
| **Attorneys for Appellee:** | No brief filed for appellee. |